## AMASA STETSON *versus* NATHANIEL FAXON.

A quay in the city of Boston, on which the warehouses of the defendant and others fronted to the south, had been used for more than sixty years for all the usual purposes of a street, but there was no record of its having been laid out as a street. The mayor and aldermen then duly laid out and recorded a street, and afterwards staked out a line in continuation of the north side of it, and passing at some distance in front of the warehouses, and paved a space on the south of such line, of the same width with the street so laid out, and treated it in all respects like the streets in the city, but it was never laid out and recorded as a street; and the city, claiming the fee in the land between the line staked out and the defendant's warehouse, sold this land to the defendant, and the defendant built a new warehouse thereon up to such line. It was *held,* that these facts were sufficient to prove a highway by prescription over the quay, and that they were not sufficient to prove that such highway had been legally discontinued over the land on which the defendant erected his new warehouse.

The defendant having erected a warehouse projecting several feet into the street, and beyond the plaintiff's warehouse, standing near on the line of the street, whereby the plaintiff's warehouse was obscured from the view of passengers and travel was diverted to a distance from it, and in consequence it was rendered less eligible as a place of business and the plaintiff was obliged to reduce the rent, it was *held,* that the plaintiff had suffered a special damage from the public nuisance, which entitled him to an action against the defendant.

THIS was an action on the case, commenced in 1834. The first amended count in the declaration alleges, that the plaintiff was and is the owner of a lot of land and warehouse thereon, in the city of Boston, bounded westerly by land of Rufus Thayer and the plaintiff, northerly by Ann street, easterly by estate of the defendant or a passage-way, and southerly by Market square or Town dock, formerly so called, and along and by the southerly front of the warehouse there long has been and now is a common public highway; but that the defendant, on the 1st of September, 1825, unlawfully erected certain fences, buildings, and obstructions in and upon that part of said highway lying eastwardly of the warehouse, and of an

avenue or alley running by the easterly side of the plaintiff's land, and projecting fifty feet beyond the line thereof ; and that the defendant has ever since kept up these fences, buildings and obstructions, by means of which the warehouse was, and has ever since continued to be greatly obscured and darkened and otherwise impaired and injured, and the access thereto from and along the said part of said highway was and is entirely obstructed, and the free communication which the plaintiff and persons frequenting and resorting to the warehouse theretofore had and enjoyed, and of lawful right ought now still to have and enjoy, with the other parts of the city, to and from the said lands and buildings, is greatly diminished and hindered ; and the defendant did also, on the same 1st of September, and at divers times from that day for the space of one year then next ensuing, place and deposite large quantities of earth, sand, stones, bricks, timbers and other materials, in and upon the remaining portion of the highway lying eastwardly of the plaintiff's warehouse, so as wholly to shut up, incumber and obstruct the same, whereby the plaintiff was entirely deprived of all use and enjoyment of the whole of the said highway lying eastwardly of his warehouse, for a long space of time, to wit, one year, and by means of all which the plaintiff has suffered great losses and damages by reason of his warehouse having been deserted by the tenants and left vacant and unoccupied, and by the frequent changes and removals of the tenants and occupants of the warehouse and land occasioned by the said obstructions and damages to the warehouse, and has from time to time been put to great expenses in making repairs and alterations in and upon the same for the purpose of obtaining new tenants and occupants thereof, and has been obliged to reduce, and has reduced, the rents which he was formerly accustomed to receive from the said land and warehouse, and has likewise been greatly damaged and injured in his inheritance in said land and warehouse by reason of the diminished value of the same and the ill repute thereof occasioned by these unlawful and arbitrary proceedings of the defendant.

Another amended count was similar to the above, except that it described the way alleged to have been obstructed, as " a public street or town way."

Stetson
*v.*
Faxon.

In other counts the plaintiff set forth in like manner an injury occasioned by the same acts of the defendant, to the plaintiff's undivided half of two lots of land and the warehouses thereon, owned by him in common with Rufus Thayer, adjoining, on the west, the lot above described.

At the trial, before *Morton* J., the plaintiff made his title by proof of the occupation of the warehouses by his tenants from the year 1797 or 1798. And it appeared that for more than seventy years, and before the dock in front of the warehouses was filled up, which was in 1762, the quay in front of them, extending easterly from Dock square, above them, to Roebuck alley, below them, was used as a public street for all the usual purposes of a street or highway, and that after the residue of the dock was filled up, which was in 1784 or 1785, the space was fenced in, extending from the west end of Faneuil Hall nearly to the east end, and about on a line with the northerly side of the old dock, which was called Market square, and below which was a street or way into Merchants' row, Merchants' row being a street running north and south a little to the east of Faneuil Hall ; and that after the dock was so filled up, the space between the plaintiff's warehouses and the land so fenced in, was used as a public street or highway in the same manner as before, and also to and from Merchants' row. But no record was produced of the laying out of such way.

In 1825, the city of Boston, in its corporate capacity, established a new market, and in the execution of this object, laid out on the north side of this market a new street, called North Market street, sixty-five feet wide, extending westerly from the water to the easterly side of Merchants' row ; which was duly recorded ; and afterwards staked out a line in continuation of the North line of that street, up to Dock square, and caused the space on the southerly side of such line to be paved and curb stones to be placed, and it has been used accordingly as a street, to the present time. But no portion of this ground westerly of the former west line of Merchants' row has been voted to be laid out or recorded as a public street or town way. The line thus staked out runs in such a direction as to leave the whole of said ancient street opposite the defendant's warehouses and the principal portion of said

13*

street opposite the plaintiff's warehouses on the northerly side of said line ; and afterwards the city, claiming to own the fee of said ancient street or highway, or the principal part thereof proceeded to sell the same in parcels to S. Hammond and the defendant, who were the abutters, from the line of Roebuck alley as far westward as the passage-way before mentioned. The piece of land lying in front of the defendant's warehouse was conveyed to him by a deed dated April 3d, 1826, in which it is described as bounding on North Market street, and the city warrant against all private and public rights of way over it. In the course of that year the defendant erected a new warehouse, covering his original lot, and also the piece of land purchased of the city, extending to the line drawn in continuation of the north line of the new street called North Market street, by which means his building was extended about thirty-six feet southerly beyond the warehouse and lot of the plaintiff ; but there was no evidence that it projected westerly beyond the line of the passage-way between their lands.

The building used for a vegetable market, which stood between Faneuil hall and the plaintiff's land, was removed, the edge stones laid, and the carriage way paved. The street is sixty-five feet wide, and is treated in all respects by the city authorities like other public streets of the city.

Before the erection of the defendant's store and one belonging to Hammond, (who erected a similar building next adjoining that of the defendant, on the east side,) all the remaining land which constituted the original highway to the eastward of the plaintiff's land, to Roebuck alley, had been also built upon up to the new line of North Market street.

Witnesses conversant and well acquainted with the plaintiff's buildings and the business carried on in them, were called by the plaintiff, and they stated facts concerning the injury sustained by the plaintiff's property from the erection of the defendant's building, and gave their opinions of the value of the rent of the plaintiff's buildings before and after the erection of the defendant's building, and of the nature and extent of the injury sustained by the plaintiff from the acts of the defendant. All these witnesses assigned as causes of damage to the plaintiff's warehouses, the obscuration of them from the view of

passengeis and the diversion of travel to a distance from them ; by means whereof they were less eligible as places of business ; and these were insisted on by the plaintiff as special damages and grounds of action.  But no one assigned as a cause of such damage, that the defendant's building rendered access to the plaintiff's buildings impracticable from the space used as a continuation of North Market street and formerly part of Market Square.

The defendant contended, that if the place in question was a highway and any wrong had been committed, it was that of erecting a nuisance on a public highway, for which a remedy might be had by indictment, but not in this action.  He further contended, that the highway which had existed, had been in fact discontinued by the acts of the city in making the new street, and in conveying to the defendant and the other abutters the parcels of land which formed a part of the original street or highway.

The jury were instructed, that if they were satisfied that the plaintiff was the owner of the warehouses in question, that there had been a highway running by them and extending over the ground occupied by the defendant's building, and that the plaintiff had sustained special injury in his property by reason of the erection of the defendant's building on the highway in the manner complained of, this was such special damage as the plaintiff might recover compensation for, and they should find a verdict for the plaintiff; and that they should estimate the yearly damages arising exclusively from this cause, and calculate interest from the end of each year, computing the damages and interest separately.

The jury returned a verdict for the plaintiff for the sum of $ 4,010·12.

The defendant moved a new trial because of misdirection of tne judge.

*J. Pickering* and *C. P. Curtis*, for the defendant.  If the land on which the alleged nuisance was erected, belonged to the defendant unincumbered by the easement of a way, the plaintiff has no ground of complaint against him.  The highway over it, if there was one, was discontinued by the operation of the grant from the city to the defendant.  *Tyler* v. *Hammond*,

11 Pick. 193. By staking out and paving the new street the city dedicated it to the public, and this alteration was a discontinuance of the supposed highway over the land in question. *Cincinnati* v. *Lessee of White*, 6 Peters, 431 ; *Barclay* v. *Howell's Lessee*, 6 Peters, 498 ; *Jarvis* v. *Dean*, 3 Bingh. 447 , [*Hobbs* v. *Lowell, post*, 405 ; 2 Pick. (2d ed.) 164, note 2 ;] *Commonwealth* v. *Westborough*, 3 Mass. R. 406. The plaintiff, therefore, should have pursued the remedy given by the statute, for damages occasioned by the discontinuance.

In general, the remedy for obstructing a highway is by indictment ; and supposing the defendant's building to stand on a subsisting highway, the plaintiff cannot maintain a civil action unless he shows special damage. The erection of this building would have caused just as much injury to the plaintiff's warehouse by obscuring it from the view of passengers and diverting travel from it, if there had been no highway over the land. This sort of injury would support a claim for damages, under the statute remedy against the city for discontinuing a highway, but it has no relation to the interruption of a highway as a passage, and does not constitute special damage, within the cases on this subject. *Williams's case*, 5 Co. 72 *b.* ; *Pierce* v. *Dart*, 7 Cowen, 609, and cases cited ; *Hubert* v *Groves*, 1 Esp. R. 148.

*J. Mason* and *C. G. Loring, contrd.* The highway over the land covered by the defendant's building, has not been discontinued. Independently of non-user for a certain length of time, it could be discontinued only according to the mode prescribed by statute, and after notice to all parties interested ; and re dress under the statute is to be sought within a year after the discontinuance. Here a piece of land is staked out and afterwards paved, and this, it is said, is a dedication of a new street, and operates as a discontinuance of the old one. But to have this effect the new way must be legally laid out and recorded. Now no notice of these proceedings is given to the plaintiff ; and when does the year for his remedy begin to run ? Is it from the staking out, the paving, or from what other time ? A dedication is by the owner of the soil, and supposing the city to be the owner, the defendant shows no vote of the city council making such an appropriation of the land. *St.* 1821, *c.* 110,

§ 16. Officers of a municipal corporation, such as the mayor and aldermen in the present case, having authority to lay out a street in the manner prescribed by law, cannot lay one out in a different manner and call it a dedication. *St.* 1786, *c.* 67 ; 1797, *c.* 30 ; 1799, *c.* 31, § 3 ; 1804, *c.* 73 ; 1816, *c.* 90 ; 1825, *c.* 171, § 2 ; *Kean* v. *Stetson,* 5 Pick. 492 ; *Commonwealth* v. *Peters,* 3 Mass. R. 229 ; *Commonwealth* v. *Great Barrington,* 6 Mass. R. 492. But if this new street was a lawful highway, still it did not discontinue the old one, for the mayor and aldermen have authority to widen streets, and how is it to be known whether this old street was widened or discontinued ? Neither was the conveyance to the defendant a discontinuance of the highway, for the authority to convey land belonging to the city resides in one body of men, and the power to lay out and discontinue streets in another.

Assuming that the highway was not discontinued, the injury complained of is such a special damage as will sustain a civil action. 3 Bl. Comm. 220 ; Co. Lit. 56 *a* ; *The King* v. *Dewsnap,* 16 East, 194 ; *Hart* v. *Basset,* T. Jones, 156 ; *Jeveson* v. *Moore,* 12 Mod. 262 ; 12 Petersd. 796 ; *Greasly* v. *Codling,* 2 Bingh. 263 ; *Rose* v. *Miles,* 4 Maule & Selw. 101 ; *Wilkes* v. *Hungerford Market Co.* 2 Bingh. New Rep. 281.

PUTNAM J. delivered the opinion of the Court. The city is in some respects to be regarded as a county ; it has authority to lay out and to discontinue public highways as well as town ways within its limits ; and public highways may be proved by prescription, as well as by dedication, within those limits, as they may be in any other part of the Commonwealth. And individuals may be indicted for public nuisances upon a public street or town way, as well as upon a common public highway. So the difference between the counts in that respect does not affect the questions now to be considered.

These questions are, whether the instructions to the jury were correct.

And first, we are satisfied the evidence was sufficient to prove that the place whereon the defendant's building was erected was a public highway, by prescription, and that the evidence does not show that it has been legally discontinued.

No record proceedings of the Court of General Sessions or of the city government, have been produced, to show such discontinuance. And no length of time short of sixty years would be sufficient to justify the continuance of a fence or building on a public highway, but such a building might be presented and removed as a public nuisance. *St.* 1786, *c.* 67, § 7. [Reduced to forty years by Revised Stat. *c.* 24, § 61.]

·The sale of the land by the city to the defendant would pass the estate, if the city owned it, but it would be subject to the public easement, and a building erected thereon would be a public nuisance notwithstanding the deed from the city. The king himself cannot give license to any to commit a nuisance Viner, *Nuisance*, *F.* The making and paving North Market street, by the side of the old street, and the other acts of the city, do not amount to a discontinuance of the ancient highway. Besides, a party may be greatly injured by the discontinuance, as well as by the laying out of a town or public way, and he should have notice and an opportunity to substantiate his claim for damages, on that account. *St.* 1816, *c.* 90, § 1.

We are all satisfied that the case comes to the single point, whether or not the plaintiff can maintain this action for special damages sustained by the public nuisance upon a highway. In other words, whether the evidence produced is sufficient to prove that the plaintiff has received particular damage from this nuisance, which was not common to all the people. If it were common to all, then the rule of law is clear that the remedy against the party making the nuisance should be by indictment. On the other hand, though the party may be indicted, yet if an individual receives a special damage, he may maintain his action for it against the wrongdoer.

In the case in Year Book, 27 *H.* 8, *pl.* 10, *page* 27, the plaintiff declared that he used to have a way from his house to his close by the highway, "royal chemin," to carry and recarry &c., and the defendant stopped the highway, so that the plaintiff could not go in that part of it to his close, to his injury and damage. There it was argued by *Baldwin* C. J., that the party should be punished only by presentment in the leet for the common nuisance, and that if one could maintain an action, another might, and so the party might be punished a hun-

ured times for the same cause.    On the other hand it was said by *Fitzherbert* J., that the man who makes the nuisance is punishable in the leet, and not by action, *unless it be where a man has greater hurt or incommodity than every other man had*, but that he who had greater incommodity or hurt should have his action to recover for the especial hurt; and the following illustration is put : where one makes a ditch across the highway and I am travelling in the night and with my horse fall into the ditch, and so have great damage and inconvenience, I may have an action against him who made the ditch.    And so in the principal case, the plaintiff having more " *commodity* " in the highway than another had, when it was stopped he had greater damage, because he had no other way to his close. But if he had not greater damage than another, then he should not have any action.

And the law is so laid down by Lord *Coke*.    To maintain this action the plaintiff must prove that the damage he has sustained " is not common to others," to use the expression of Lord *Coke*.    Co. Lit. 56 *a*.

So in 5 Coke, 73, *Williams's case*, the same law is stated. " But if any particular person afterwards, by the nuisance done, has more particular damage than any other, there for that particular injury he shall have a particular action on the case."

The general rule seems clear enough, but the difficulty arises from its application to the particular case.

In *Paine* v. *Patrich*, Carth. 194, it was said by *Holt* C. J., that if a highway be so stopped that a man is delayed a little while on his journey, by reason whereof he is damnified, or some important affair neglected, that is not such a special damage for which an action of the case will lie ; but that the damage ought to be direct and not consequential, as the loss of his horse, or some corporal hurt in falling into a trench in a highway.

In *Hubert* v. *Groves*, 1 Esp. Rep. 148, the plaintiff declared that he was possessed of a messuage and had a way out of the same through and over a public highway, to carry all things necessary in the coal and timber business, which the defendant obstructed by earth and rubbish, and thereby prevented the plaintiff from carrying on his business as a coal and

Stetson
*v.*
Faxon.

timber merchant in so advantageous a manner as he had a right to do, but he was obliged to carry the coals by a circuitous route.   Lord *Kenyon* ordered the plaintiffs to be called, being of opinion that this was not such a special damage as would entitle the plaintiff to maintain the action.   The authority of this case has been greatly shaken, however, as will be seen hereafter.

In *Maynell* v, *Saltmarsh*, 1 Keb. 847, the plaintiff brought his action against the defendant for erecting posts in a highway through which the plaintiff passed to and from his close, and alleged that his corn was corrupted and spoiled in consequence of the obstruction ; and it was held that that was a sufficient special damage to support the plaintiff's action.

In *Chichester* v. *Lethbridge*, Willes, 71, where the defendant obstructed the highway by a ditch or gate across the road, by means of which the plaintiff was obliged to go a longer and more difficult way to and from his close, and the defendant opposed the plaintiff in attempting to remove the nuisance, it was held that the action well lay for special damages.   And *Willes* C. J. cited the case of *Hart* v. *Basset*, T. Jones, 156, where one who had a right to tithes and a direct way to carry them through a highway to his barn, but who was obliged, in consequence of the stoppage of the highway, to carry them by a longer and more difficult way, recovered for the extra labor and pains which he was forced to take with his cattle and servants by reason of the obstruction.

In Willes, in a note, may be found a reference to the case of *Iveson* v. *Moore*, reported in Salk. 15, in 1 Lord Raym. 486, and in 12 Mod. 262, *case* 474.   There the plaintiff declared that he had a colliery near a highway by which he used to carry his coals, and that the defendants stopped the way, and so the plaintiff lost the opportunity of selling his coals, which were greatly deteriorated.   The court of King's Bench were divided in opinion, and the cause was argued before all the judges of England, who agreed with *Turton* J. and *Gould* J., that the action lay.   They said, among other things, that the plaintiff did suffer a special damage more than the rest of the king's subjects, and particularly in respect to his trade, and we particularly refer to the opinion of *Gould* J. and the cases cited by him, which are not by us now cited more at large.

In *Baker* v. *Moore* cited by *Gould* J. in 1 Ld. Raym. 491, the plaintiff sued the defendant for making an obstruction across a highway, in consequence of which the plaintiff's tenants left his houses and he lost the profits of them. It was objected for the defendant, that the damage was not special enough, but the court were of a different opinion. The judgment was arrested, however, upon another ground, viz. that the plaintiff did not show that he was possessed of any houses in which there were tenants, and if he had not any houses, then he could not be damnified.

In *Rose et al.* v. *Miles*, 4 Maule & Selw. 101, the defendant obstructed a public navigable creek by mooring his barge across the same, and prevented the plaintiff from navigating his loaded barges, *per quod* he was obliged to carry his goods over-land at great expense ; and the action was supported.

In *Greasly* v. *Codling et al.* 2 Bingh. 263, the plaintiff was in the habit of passing up and down a highway with coals, and was detained four hours, and could not carry as many loads in a day by the circuitous route which he was obliged to go in consequence of the defendants' obstruction of the highway ; and the action was maintained.

The case of the *Mayor and Burgesses of Lyme Regis* v. *Henley*, original plaintiff, 1 Bingh. New Rep. 222, has a strong bearing upon the case at bar. The facts (very shortly) were, that the king granted to the corporation, the pier-quay of Lyme Regis, and they were to repair the buildings, banks, seashore, and other mounds, &c. between the borough and the sea, at their own cost. They accepted the charter. The plaintiff had land near the seashore, which was overflowed in consequence of the wrongful omission of the corporation to repair the banks, seashore, &c. ; and he brought his action for the special injury. The cause was decided in the House of Lords in 1834. It was held, that an indictment would lie against the corporation for the breach of their duty which arose under the charter. *Park* J., who delivered the opinion of the judges, said, " it is clear and undoubted law, that wherever an indictment lies for non-repair, an action on the case will lie at the suit of a party sustaining any peculiar damage." The judgment for the original plaintiff was affirmed.

14

We propose to cite only two other cases, one decided in Baltimore county court, before *Stephenson Archer*, chief judge of the sixth judicial district of Maryland, *Baron et al.* v. *The Mayor and City Council of Baltimore*, 2 Amer. Jurist, 203, the other, a late English decision, *Wilkes* v. *Hungerford Market Co.* 2 Bingh. New Rep. 281.

The plaintiffs in the former case owned a wharf in the harbour of Baltimore, and the city authorities of Baltimore diverted certain streams of water from their natural channels to a point near the plaintiffs' wharf, and thereby caused a great deposit of sand and earth to be carried down, and so to lessen the depth of water at the wharf, and materially to impair the rents and value of the wharf.

It was contended, among other things, for the defendants, that if any wrong was done in filling up the navigable water near to the wharf to some extent, as the plaintiffs set forth, it was a public nuisance, and that the defendants were answerable only upon an indictment, and not in a civil action by the plaintiffs. The opinion of *Archer* C. J. is very clear and able. It is founded on the immutable principles of justice and sound constitutional law. " If (said he) the exercise of the power [by the defendants] was wanton or lawless and improvident, every one admits their responsibility." But the case was not defended upon that ground. On the contrary, it was contended by the defendants, that they were a public corporation, acting within the scope of their authority, upon advice, with due care and circumspection." The opinion of *Archer* C. J. proceeds upon that ground, that it was a measure which was necessary and beneficial to the city ; but it was held, that they should not carry it into effect without compensating the individuals whose property was thereby sacrificed. The right of the plaintiffs to pass and repass with their vessels in the navigable waters, was recognized. They had been deprived of the privilege by the act of the defendants. They had as perfect a right to the profits growing out of the depth of the navigable water which flowed up to their wharf, as to the wharf itself. But only vessels of smaller size could approach the wharf after the deposit had been made, and which the defendants had caused Their right to wharfage was greatly impaired, and for that special

injury they were entitled to maintain their action. The defendants, said the chief judge, "are trustees of public interests, for their own benefit, and ought to answer as an individual to the person at whose expense they are benefited." The jury in that case returned a verdict for the plaintiffs for $4700.

The case of *Wilkes* v. *Hungerford Market Company*, was decided in November 1835. The plaintiff, a bookseller, having a shop by the side of a public thoroughfare, suffered in his business in consequence of passengers having been diverted from the thoroughfare by an unauthorized obstruction across it for an unreasonable time. The allegation of the plaintiff was, that by means of the obstruction, he was prevented from carrying on his trade and business in so large, ample and beneficial a manner as he otherwise might and would have done, and that he had lost and been deprived, during the time that the obstruction existed, of divers great gains and profits which might and otherwise would have arisen and accrued to him from carrying on the trade and business of a bookseller in his messuage and premises. The plaintiff proved the allegations in his writ, and obtained a verdict. And on the hearing of the motion for a nonsuit, it was contended, that the act of the defendants constituted a public nuisance, for which an indictment, but not a civil action, might lie. The whole Court decided otherwise. And the cases from the Year Books up to that time were examined. Lord *Kenyon's* ruling in the case of *Hubert* v. *Groves* was examined. *Tindal* C. J. suggested a distinction between that case and the case then under consideration, which seemed not satisfactory even to himself, for he concluded by remarking, that if it were not sufficient, he must yield to the greater authority of other decisions. *Park* J. thought it not entitled to the respect which is commonly rendered to the opinions of Lord *Kenyon*. In short, the authority of that case was greatly shaken, if it was not overruled.

The rule of the law, which is applicable to the case at bar, has been in full force for many centuries. We know that extreme cases may be put, which makes it difficult to draw the line between substantial and imaginary damages. Thus, suppose a ditch to be cut across Washington street at the Roxbury line ; shall every holder of real estates and of shops in that

street between Cornhill and Roxbury, maintain an action for special damages to their estates for that nuisance ? The proposition would seem to be absurd. But it would not follow, that because some owners of shops, who lived a mile from the obstruction, might not have special damages, those who lived near to it might not. Let those who suffer, have their actions. The question of damages may be safely intrusted to the jury. We mean to give no countenance for suits *de minimis*. But suppose that twenty men in the course of one night should fall into that ditch and receive injury, could it be maintained that each of them might not severally recover special damages, according to the extent of the actual injury received by each ?

The people at large are supposed to be injured, merely because they cannot pursue a particular track ; which is an inconvenience felt by thousands, to be redressed by a prosecution in the name of the Commonwealth. They suffer no actual particular injury to their trade or estates, and a prosecution on the behalf of the public furnishes the appropriate remedy.

But individuals who, either in their persons or estates, suffer great damage, which may be proved to proceed and follow necessarily from the public nuisance, surely stand upon different ground. And each may have his action and recover for the particular damage, according to the evidence.

Take the case cited from 1 Bingh. New Rep. 222. The plaintiff's lands were inundated by means of the nuisance. The inhabitants of the borough who had no lands in that situation, could only justly complain of a common annoyance. But all the individuals who held lands in severalty, might severally maintain their actions for their several special damages. So in the case cited from 2 Bingh. New Rep. 281, which has a strong resemblance to the case at bar. The plaintiff there was deprived of the profits of his bookstore, and his estate was greatly prejudiced by the public nuisance. But the community had no estate, and no bookstores, in that situation. They only suffered such inconvenience from the obstruction of the highway as was common to all the people. Let them indict the wrongdoer if they will. So in the case cited from the American Jurist. It was the plaintiffs whose wharf estate was greatly deteriorated, by the public nuisance. The inhabitants of Bal-

timore were rather benefited than injured by the public improvement, by which the plaintiffs' interest was destroyed.

So in the case at bar, the citizens of Boston who want a mere right of passage from Market square to the sea, may pass through North Market street as well as they could through the old way which was obstructed. They have no lands and warehouses to be destroyed or greatly injured ; they have no loss of rents from the desertion of tenants. They at most are obliged to travel in a new street near to the old one, and probably do not desire to have the old one re-opened. At most, they could complain only of what is technically a common nuisance, by which they experience only an inconvenience common to all the citizens. But what to them is at most a mere common inconvenience, is a thing which, in respect to the plaintiff, essentially impairs the value of his estate.

We agree that the plaintiff must set forth a special damage. It will not be sufficient for him to state merely that the defendant obstructed the highway in such a manner as that he could not pass through it. *Fineux v. Hovenden*, Cro. Eliz. 664. He must fail unless he goes on and states that he has sustained a particular injury, different in its character from that which is common to all the citizens.

We will now very briefly recur to the facts alleged and proved in the case at bar. The plaintiff averred his title to the warehouses and real estate, and that by means of the obstructions made by the defendant upon the highway, his warehouses have been greatly obscured and injured, and access thereto prevented from and along the part of the highway so obstructed ; that thereby the free communication which the plaintiff and other persons frequently resorting to his warehouses formerly enjoyed, has been greatly diminished and hindered ; that he has suffered great damage from the nuisance, by reason of his warehouses and lands having been deserted by his tenants, and left vacant and unoccupied by the frequent changes and removals of his tenants and occupiers, and that he has been obliged to reduce his rents, &c.

Now upon the authority of the adjudged cases before referred to, we are all of opinion, that these are sufficient special injuries, peculiar to the plaintiff, and not common to all the citizens,

for which the plaintiff may maintain his action, notwithstanding the defendant may be liable to answer upon an indictment for the public nuisance.

The facts alleged have been proved to the satisfaction of the jury ; and they have assessed damages for the plaintiff in the sum of $ 4010·12.

No motion is made to set aside the verdict on the ground that the damages were excessive. There was no motive to give too much ; for if the city are to indemnify the defendant upon their covenant of warranty contained in their deed to him, the damages must fall upon the jurors themselves in due proportion.

And the long established rule of law which we enforce, is not, we trust, to check the progress of public improvement. Let the city take from individuals all that is necessary, convenient, and becoming this great and flourishing capital, but let compensation go hand in hand with the public benefit.

The opinion of the whole Court is, that the plaintiff is entitled to have his judgment upon the verdict.