[Civ. No. 8581. First Appellate District, Division One.—April 27, 1934.]

GEORGE V. BIBER et al., Appellants, v. R. J. O'BRIEN, Respondent.

Aitken & Aitken for Appellants.

Walter H. Linforth, Wm. M. Cannon and Theodore J. Roche for Respondent.

THE COURT.—Plaintiffs for many years have been the owners of a lot on Sutter Street in San Francisco upon which stands a five-story apartment building. This building was erected in 1911. The westerly 42.7 feet of the rear line of this lot abuts upon the rear of a lot facing on Bush Street owned by defendant. In 1927 defendant erected upon his lot a building known as the Mayflower hotel. Plaintiffs allege that defendant's building is an unlawful structure, and that they have suffered damage by reason of its erection. They aver that the building was designed and intended as an apartment house; that it is a semi-fireproof building seven stories in height, although the State Housing Act prohibits a semi-fireproof structure of more than six stories in height; that, being an apartment house, it covered more of the lot than the act permitted, and that it immediately abutted the rear line thereof and was not set back sixteen feet therefrom as required by the act in such cases. Further, that the structure was designed and erected with intent to violate the law and to injure plaintiffs; that the latter have been injured and their buildings exposed to damage by fire, the lives and health of the plaintiffs and their tenants endangered and their comfort disturbed by reason thereof. As a result they claimed a depreciation in the value of their building, the loss of rents, and that certain expendi-

tures on their property were made necessary by defendant's acts.

These allegations with immaterial exceptions were denied, and the cause came on for trial before a jury. At the conclusion of plaintiffs' case the court directed a verdict for the defendant, and from the judgment entered thereon plaintiffs appealed.

According to section 10 of the State Housing Act (Stats. 1923, p. 781) an apartment house is "any building or portion thereof more than one story in height which is designed, built, erected, leased, let or hired out to be occupied or which is occupied as a home or residence of three or more families living independently of each other and doing their cooking in the said building", and a kitchen is defined as "any room used or intended or designed to be used for cooking and preparation of food".

Sections 13 and 14 required certain portions of the lot upon which an apartment house is erected to be left unoccupied.

The fact that defendant's building is a semi-fireproof structure is undisputed; and section 12 of the act provides that "no semi-fireproof apartment house or hotel hereafter erected shall exceed six stories in height at any point. . . . "

Section 6 makes the violation of any of its provisions a misdemeanor punishable by fine or imprisonment or both; and also provides that except as otherwise therein provided the procedure for violations of the act, or for the abatement of a nuisance in connection with a building or the premises thereof shall be as set forth in the charter and ordinances of the municipality in which the proceeding is instituted.

Sections 7 and 8 make it unlawful to erect any building in any incorporated town, city or city and county without obtaining a permit from the department charged with the enforcement of the act (namely, the department or officer thereof so empowered by ordinance (sec. 1), and require before occupancy a "permit of occupancy to be issued by such department".

In addition, section 76 of the act provides that "in case any apartment house, hotel or dwelling or any portion thereof is constructed, altered, converted or maintained in violation of any of the provisions of this act . . . or in case a nuisance exists in any such apartment house or dwelling,

or upon the lot upon which it is situated, said department may institute any proper action or proceeding to prevent such unlawful construction . . . or maintenance; to restrain, correct or abate such violation or nuisance; to prevent the occupation of said apartment house, hotel or dwelling; to prevent any illegal act, conduct or business in or about such apartment house, hotel or dwelling or lot''.

Defendant contends that his building is a hotel and not an apartment house; that it is a properly constructed six-story building and not a fire menace; also that the act places the sole and exclusive duty of enforcing its provisions upon state and municipal authorities and grants no private right of action; and further, assuming the structure to be illegal, that it is not a public nuisance; but if so, plaintiff proved no special damage by reason thereof.

■ The legislature may declare that to be a nuisance which is such in fact (*Los Angeles County* v. *Spencer,* 126 Cal. 670 [59 Pac. 202, 77 Am. St. Rep. 217]; *Laurel Hill Cemetery* v. *San Francisco,* 152 Cal. 464 [93 Pac. 70, 14 Ann. Cas. 1080, 27 L. R. A. (N. S.) 260]; *Lawton* v. *Steele,* 152 U. S. 133 [14 Sup. Ct. 499, 38 L. Ed. 385]); and if an act or thing is done or maintained in violation of law it may constitute a nuisance. (*People* v. *Wing,* 147 Cal. 382 [81 Pac. 1104].) ■ Nuisances may be public, or private, or both (46 Cor. Jur., Nuisances, sec. 3, p. 646; *Yolo County* v. *Sacramento,* 36 Cal. 193; *Baldocchi* v. *Four Fifty Sutter Corp.,* 129 Cal. App. 383 [18 Pac. (2d) 682]), the distinction lying not in the number of persons affected by it but in the special injury which results to a particular individual by reason of the injurious conduct or condition. (*Yolo County* v. *Sacramento, supra; Fisher* v. *Zumwalt,* 128 Cal. 493 [61 Pac. 82]; *McLean* v. *Llewellyn Iron Works,* 2 Cal. App. 346 [83 Pac. 1082]; 20 Cal. Jur., Nuisances, sec. 8, p. 270.) ■ And when the alleged nuisance would constitute a private wrong by injuring property or health, or creating personal inconvenience, for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which render the guilty party liable to indictment for a common nuisance. In such cases the damage cannot properly be said to be common or public,

however numerous the cases of similar damage arising from the same cause. (*Lind* v. *San Luis Obispo*, 109 Cal. 340 [42 Pac. 437].)

The act in question contains no express declaration that structures erected in violation of its provisions shall be deemed nuisances. It does, however, impose penalties for such violations; but the violation of a penal statute does not of itself create a private nuisance. (*Carter* v. *Chotiner*, 210 Cal. 288 [291 Pac. 577].) Nor does the failure to obtain a license or permit required by law necessarily have that effect. (46 Cal. Jur., Nuisances, sec. 24, p. 660.) However, it has frequently been held that if a structure is erected or maintained in violation of law, and constitutes a private nuisance as to an adjoining land owner, an action for damages or equitable relief will lie. (*First Nat. Bank of Mt. Vernon* v. *Sarlls*, 129 Ind. 201 [28 N. E. 434, 28 Am. St. Rep. 185, 13 L. R. A. 481]; *Aldrich* v. *Howard*, 7 R. I. 199; *Harris* v. *Poulton*, 99 W. Va. 20 [127 S. E. 647, 40 A. L. R. 334]; *Fitzgerald* v. *Merard Holding Co.*, 106 Conn. 475 [138 Atl. 483, 54 A. L. R. 361]; *Knight* v. *Foster*, 163 N. C. 329 [79 S. E. 614, 50 L. R. A. (N. S.) 286]; *Baumgartner* v. *Hasty*, 100 Ind. 575 [50 Am. Rep. 830]; *Stetson* v. *Faxon*, 36 Mass. (19 Pick.) 147 [31 Am. Dec. 123]; *Yolo County* v. *Sacramento, supra; Baldocchi* v. *Four Fifty Sutter Corp., supra; Cushing etc. Co.* v. *Gray*, 152 Cal. 118 [92 Pac. 70, 125 Am. St. Rep. 47].) And where the rights of individuals are involved a defendant cannot rely upon the fact that his conduct was authorized by statute or was not forbidden (*Woodruff* v. *North Bloomfield etc. Co.*, 18 Fed. 753; *Vowinckel* v. *N. Clark & Sons*, 216 Cal. 156 [13 Pac. (2d) 733]; *Eaton* v. *Klimm*, 217 Cal. 362 [18 Pac. (2d) 678]; *Williams* v. *Bluebird Laundry Co.*, 85 Cal. App. 388 [259 Pac. 484]; 20 Cal. Jur., Nuisances, secs. 22, 23, pp. 286, 288); but in such cases the plaintiff must show that he has suffered exceptional damage other than that suffered by the public generally. (*Perris* v. *Mountain View etc. Assn.*, 206 Cal. 669 [275 Pac. 787].)

Plaintiff first contends that defendant's building is an unlawful structure because it is an apartment house, and being such violates the provisions of the Housing Act as to the portion of the lot it may lawfully cover. As the basis for the claim that it is an apartment house it is alleged that

the building has kitchen facilities therein designed for cooking.

The evidence shows that each room contained a recess in the wall about six feet broad and two feet deep. In each recess was installed a refrigerator, a sliding bread-shelf, other shelves and drawers and cupboards, a sink with hot and cold water service, with drainboards on each side of the sink. Two electric outlets with wiring suitable for the use of electric cooking appliances were also contained therein, and a mechanical exhaust ventilation system was installed in the toilet and each recess. The latter are referred to by plaintiffs as kitchenettes and by the defendant as service pantries. Upon the completion of the building the department of public health of the city and county of San Francisco issued a permit of occupancy following an agreement by defendant in writing that under no circumstances should cooking or light housekeeping be permitted in any guest-room therein. The record discloses no evidence that the rooms contain stoves or cooking utensils, or that any cooking was done therein except in one instance. A witness, who resided in Berkeley, testified that on one occasion at plaintiffs' request he engaged a room therein. He took with him a portable electric stove, cooking utensils, dishes and food, and occupied the room for one night and part of one day. During this time he prepared a meal. He further testified that he had no knowledge of any cooking in other rooms, and no attempt was made to prove other instances of the kind, it being plaintiff's contention that it was sufficient for them to show that the building was so designed and might be so used.

It appears that the authorities were satisfied of the owner's lawful purpose, and there is no evidence of any departure from this purpose except in the one instance and under the circumstances shown.

As stated, the fact alone that an unlawful condition exists is not sufficient to constitute a private nuisance; and the above testimony without more furnishes no reasonable ground for the conclusion that it was his intention to let the rooms to families, or to permit cooking therein, or that the structure has been or will be operated otherwise than as a hotel. ■ As the intent or motive of the person who erects or maintains a structure or makes certain uses of his prop-

erty is not material in determining whether there is a nuisance, so if a structure is not of itself a nuisance it cannot be complained of on the ground that it was erected and maintained with the object of annoying an adjoining owner unless the statute declares such structures to be nuisances. (46 Cor. Jur., Nuisances, p. 661.)

With respect to the question whether the building is a seven-story structure, as maintained by plaintiffs, the evidence shows that in addition to the main floor which opens upon the street there are six floors of living rooms. One of these is immediately over the main floor, and is called a mezzanine floor. It is, however, as testified, of "full ceiling height" and contains nine guest-rooms with hallways and baths. What percentage of the space of the ground floor is covered by the mezzanine floor is not clear from the evidence. The architect stated this to be forty per cent, while appellant, basing his contention on the plans of the building, claims about seventy-five per cent. The primary object of the requirement that buildings over a certain height be of fireproof construction was, of course, the protection of its occupants, the difficulty of escape in case of fire being augmented in proportion to the increase in height. A story has been defined as the habitable space between two floors (*Hunter* v. *Narragansett Electric Lighting Co.*, 50 R. I. 196 [146 Atl. 624, 625]; *Vallen* v. *Cullen*, 238 Mass. 145 [130 N. E. 216]; and as a set of rooms on the same floor or level (*Lagler* v. *Bye*, 42 Ind. App. 592 [85 N. E. 36]); and a mezzanine floor has been defined as a story of diminished height introduced between two higher stories (Century Dictionary). The evidence was, we think, sufficient to support the conclusion that the floor in question was a separate story within the meaning of the act.

Of course, a six-story nonfireproof building creates some fire hazard to the community and adjoining property; but its erection not being illegal no right of action on the ground of increased hazard arises. If our conclusion is correct that the building is not an apartment house within the meaning of the act then plaintiffs' damage, if any, is due to increased fire hazard, and they have no other ground for complaint as the structure, with the exception of the extra story, complies with the act.

According to section 3281 of the Code of Civil Procedure, "Every person who suffers detriment from the unlawful act or omission of another may recover from the person at fault a compensation therefor in money, which is called damages." Plaintiffs claim that the effect of this section is to extend their right of recovery beyond what has generally been declared to be the rule. But this provision—which was based on Field's Draft of the New York Civil Code, section 1832 (Deering)—is merely declaratory of an elementary rule. (*Coats* v. *Atchison, T. & S. F. Ry. Co.*, 1 Cal. App. 441, 444 [82 Pac. 640]; *Wolff* v. *Los Angeles*, 49 Cal. App. 400 [193 Pac. 862].) (See Draft Proposed New York Civil Code, published in 1862, sec. 1495, wherein Sedgwick on Damages is referred to as the source of this provision; also in the Report of the Commissioners prefacing Field's Draft, at p. vii, it is said: "All the Commissioners profess is that they have endeavored to collect those general rules known to our law which are applicable to our present circumstances and ought to be continued.")

As hereinbefore stated, an individual complaining of an unlawful structure must show that he has suffered some exceptional damage other than that suffered by the public generally. An increase in fire hazard or in insurance rates has been generally held not to constitute such damage. (*McCloskey* v. *Kreling*, 76 Cal. 511 [18 Pac. 433]; *Siskiyou etc. Co.* v. *Rostel*, 121 Cal. 511 [53 Pac. 1118]; 46 Cor. Jur., Nuisances, sec. 51, p. 680.) Nor will the fact alone that property will be depreciated in value by the mere proximity of an unlawful structure have that effect. (*Severy* v. *Central Pac. R. R. Co.*, 51 Cal. 194; *Bigley* v. *Nunan*, 53 Cal. 403.) Plaintiffs' sole contention on this phase of the case is that the structure, being unlawful in the respect stated, is therefore a nuisance; and being in close proximity to their building the increased fire hazard necessarily causes them special detriment different in kind from that suffered by others. In support of this they rely on the case of *Smith* v. *Collison*, 119 Cal. App. 180 [6 Pac. (2d) 277]. There the trial court found that the unlawful structure would cause an increase in fire hazard, and also that the business proposed to be carried on therein would occasion excessive and loud noises by reason of automobile traffic, the collection of dirt and rubbish upon plaintiff's property, and other sources of annoyance within

a restricted residential zone. The latter facts were sufficient to sustain the judgment; and the opinion indicates no intention to depart from the rule declared in the cases cited. Nor was this the effect of other cases cited by plaintiffs, viz., *Fisher* v. *Zumwalt, supra; City Store* v. *San Jose etc. Co.,* 150 Cal. 377 [88 Pac. 977]; *Willson* v. *Edwards,* 82 Cal. App. 564 [256 Pac. 239]; *Williams* v. *Bluebird etc. Laundry Co., supra.*

Defendant's building, not being an apartment house within the statute there was no proof that plaintiffs suffered actionable injury on account of its erection and maintenance, and a verdict for defendant was properly directed. We do not mean to hold, however, that should the same be hereafter conducted as an apartment house contrary to law plaintiffs would in a proper case be without remedy.

The judgment is affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1934.