[L. A. No. 14635. In Bank.—July 13, 1936.]

J. F. KATENKAMP et al., Appellants, v. UNION REALTY COMPANY (a Corporation), Respondent.

Leland Crawford, A. W. Robertson and Maxwell Nichols for Appellants.

Heaney, Price & Postel and Heaney, Price, Postel & Parma for Respondent.

THE COURT.—This is an action in equity for a mandatory injunction to compel the removal of groins erected on littoral lands. A demurrer was sustained to plaintiffs' first amended complaint and, upon failure to further amend within the allowed time, a judgment was entered for defendant, from which plaintiffs appealed.

The first amended complaint in substance alleges: That plaintiffs and defendant are owners of adjoining tracts of land bordering on Miramar Bay, an inlet of the Pacific Ocean, at Santa Barbara, defendant's property being upon the westerly arm of the bay, west of plaintiffs' properties. That in a natural state defendant's land is rocky and devoid of sand or beach but plaintiffs' lands possess a sandy beach of 100 to 200 feet in width to the mean high tide line of the

bay, and extending beyond some 500 feet under the waters of the bay. That plaintiffs' lands have been used for fifty years past for residential, recreational, bathing and boating purposes and valuable improvements have been erected thereon. That about June 1, 1929, "solely for the purpose of securing the accretion of sand to its shore and upon its property and thereby to create a sandy beach and shore to the front of and upon its said property, defendant . . . built upon the easterly line of its said property a certain structure known as a groin or wall . . . extending from the foot of the bluff bank . . . approximately 100 feet to the mean high tide line of the said waters of Miramar Bay and into the waters thereof at right angles to said shore approximately 100 feet. That at the same time defendant built . . . a second groin about 200 feet westerly from the first groin . . . extending from the cliff bank upon the said property a distance of approximately 50 feet to the mean high tide line and from said point into said water a distance of approximately 75 feet." That these structures were intended to and had the effect of so changing and diverting the natural, normal action of the tides, currents and waters as to stop the sands carried in suspension in the water from being deposited upon plaintffs' lands and to cause them to be deposited upon the land of defendant, with the result that there has been a gradual accumulation and accretion of sand covering the natural rocks and creating a sandy beach about 200 feet in width on defendant's land, and a. removal of sand from and in front of plaintffs' lands, leaving exposed gravel, rubble and rocks formerly covered, thereby rendering plaintiffs' lands unsuitable for purposes of their former use, with continued impairment, injury and destruction of the character and enjoyment thereof, not measurable or compensable in damages; also causing the mean high tide line to advance upon plaintiffs' property 50 to 100 feet from the mean high tide line as it existed prior to building of the groins; and also leaving exposed a rocky approach which makes less accessible the waters of the bay.

The prayer of said complaint is that a mandatory injunction be issued requiring defendant to remove such portion of the groins as in the opinion of the court interferes with the natural and normal action of the currents, tides and waters of the ocean upon plaintiffs' properties; that defend-

ant be permanently enjoined from erecting upon its property any structures which interfere with the natural and normal flow of the ocean currents, tides, or waters to and upon plaintiffs' properties; and that plaintiffs have general relief and costs.

To this pleading defendant interposed a general and special demurrer alleging in substance: (1) That the complaint fails to state facts sufficient to constitute a cause of action; (2) That the state of California is a necessary party defendant, having an interest in the groins which would be obstructed by granting of the injunction; and (3) that the complaint is uncertain, ambiguous and unintelligible in various respects.

In sustaining this demurrer the trial court rendered a memorandum opinion expressing its view that the complaint is insufficient in that it fails to show that plaintiffs have exhausted the legal remedy to secure removal of the groins afforded them by section 690.10 of the Political Code. A discussion of this point, prefaced by one or two preliminary observations, will first be undertaken. ■ On appeal from a judgment entered, after a demurrer has been sustained to a complaint, all issuable facts well pleaded, legally provable, and not inconsistent with other allegations, will be taken as true; the question of plaintiffs' ability to prove the allegations, or possible difficulty in making such proof, does not concern the reviewing court. (*Penziner* v. *West American Finance Co.*, 133 Cal. App. 578 [24 Pac. (2d) 501]; 21 Cal. Jur., p. 96, sec. 62.)

■ It should also be noted that the state of California owns "all land below tide-water, and below ordinary high-water mark, bordering upon tide-water within the state . . ." (sec. 670, Civ. Code), and has (subject to paramount power of the federal government to control navigation in so far as foreign and interstate commerce is concerned) concurrent and subordinate power to regulate and control tidelands and waters in the interests of navigation and for the general welfare of the public (26 Cal. Jur., p. 307 et seq.). The groins here involved were constructed about 100 feet and 50 feet, respectively, upon the property of defendant, and extending seaward beyond the line of mean high tide an additional distance of about 100 feet and 75 feet, respectively. They were constructed in June, 1929, and the alleged conse-

quences of their maintenance commenced to become manifest about October, 1929, continuing to date of commencement of this action in September, 1932. Between the latter dates, to-wit, in 1931 (Stats. 1931, p. 925), the legislature enacted section 690.10 of the Political Code (effective August 14, 1931). This is the statute under which defendant claims plaintiffs should have applied for removal of the groins before seeking the aid of a court of equity. It provides in part:

"The department of finance thru the chief of the division of state lands is hereby authorized, upon written application of the littoral owner, to grant authority to any owner of the littoral lands, to construct, alter or maintain, groins, jetties, seawalls, breakwaters, and/or bulkheads upon, across or over any of the swamp . . . tide or submerged lands of this state bordering upon such littoral lands *if at the time of construction or alteration the same do not unreasonably interfere with the uses and purposes reserved to the people of the state* and is hereby authorized . . . to make . . . reasonable . . . regulations with reference to such applications and the . . . manner under which said structures may be constructed, altered or maintained . . . Said department shall also in a similar manner, have power to remove, require to be removed, repaired or altered and to regulate the . . . maintenance of structures mentioned herein and existing at the time this section goes into effect, and to make reasonable rules and regulations in reference thereto. . . . "

Defendant contends that the statute confers upon the department of finance exclusive jurisdiction of the regulation and removal of groins and that plaintiffs, by reason of their failure to invoke this jurisdiction, are precluded from maintaining this action. Plaintiffs reply that the statute so interpreted would be unconstitutional and void. Their position is that the statute authorizes the department only to find, both in granting permits for erection of groins and in requiring their removal, whether the same "unreasonably interfere with the uses and purposes reserved to the people of the state" and that there is therein no provision for relief under a factual situation involving merely a controversy between private parties. Plaintiffs contend that the statute confers upon the department of finance merely ministerial or executive, as distinguished from judicial functions.

The scope of the statute has already been considered in a recent case before the District Court of Appeal (*Katenkamp* v. *Department of Finance,* 9 Cal. App. (2d) 343 [49 Pac. (2d) 897]),—a *certiorari* proceeding growing out of this same controversy, instituted by one of these plaintiffs, J. F. Katenkamp, to review the action of the department of finance under section 690.10 in issuing to this defendant permits to maintain said groins, and to have said permits annulled and set aside on the grounds which form the basis of the complaint herein. The court below sustained a demurrer to the petition for *certiorari* and, upholding that ruling, the District Court of Appeal said: "We find it unnecessary to determine the question of petitioner's right to maintain this proceeding, because, even assuming such right, we believe the act complained of here is not reviewable by writ of *certiorari.* Granting a permit to maintain a groin, with no notice of the application required by law, no hearing prescribed and no judicial determination of any right involved, does not constitute a judicial function but rather a ministerial or executive one. As such it is not reviewable by writ. (*Frasher* v. *Rader,* 124 Cal. 132 [56 Pac. 797] ; *Brown* v. *Board of Supervisors,* 124 Cal. 274 [57 Pac. 82].) "

This holding is sound (*Standard Oil Co.* v. *State Board of Equalization, ante,* p. 557 [59 Pac. (2d) 119]). There is nothing in section 690.10 which purports to empower the department of finance to determine judicially a controversy involving no public interest but growing out of alleged injury to the property of a private littoral owner by maintenance of groins upon the property of an adjoining littoral owner and the right of the former to have the structures abated as a nuisance. Indeed, if the statute did purport to confer judicial powers upon said department, it would be unconstitutional. (*Standard Oil Co.* v. *State Board of Equalization, supra.*) The authority of the department under the statute is clearly limited to so regulating the construction, maintenance and removal of groins that they do not "unreasonably interfere with the uses and purposes reserved to the people of the state" and, where there is no unreasonable interference, to granting proper applications.

In this connection defendant, conceding the limited authority conferred by section 690.10, still contends that plaintffs should have been required, before bringing this

action, to apply to the department of finance for a permit authorizing removal of the groins, since, in the absence of such permit, a court of equity would not be authorized to order their removal—this for the reason that the department of finance and not a court of equity is authorized in the first instance to pass upon the question of whether the removal would be adverse to public interest. In other words, defendant fears that it may be ordered by judgment in this action to remove the groins, and at the same time be denied a removal permit under section 690.10 because of intervention of public interest; therefore, it contends that a condition precedent to the right to maintain this action is the securing by plaintiffs of a removal permit, thus certifying that the removal will not be detrimental to public interest.

This argument overlooks the fact that there is no provision in section 690.10 which would entitle plaintiffs to apply for or receive a permit for removal of groins located on the land of their neighboring littoral owner and lands of the state bordering the land of said neighboring littoral owner. The section contemplates only an application by the littoral owner upon whose littoral lands the lands of the state border. Furthermore, it should be noted that the granting by the department to defendant of the permit to maintain the groins amounted merely to a finding that their maintenance did not "unreasonably interfere with the uses and purposes reserved to the people"—it did not constitute a finding that the groins were necessary to or in any manner served the public interest. It follows that the public interest would not be affected in any manner by removal of the groins. In other words, the requirements of the statute do not enter into this case nor constitute a limitation upon the power of the court of equity to grant relief should plaintiffs' claims be found meritorious. The issuance by the department of finance of a removal permit is not a prerequisite to empower the court to act in the settlement of a controversy involving solely the rights of private littoral owners. It is obvious that if the power of the court of equity could be curtailed by the department's refusal to issue a removal permit in a case such as this, it would result in a taking or damaging of private property, without compensation to the owner thereof, in violation of the state Constitution (art. I, sec. 14). The statute simply provides that the power of removal exists when the public inter-

est has become adversely affected by the continuance of the structures.

■ It follows that the state of California is not a necessary party defendant herein, nor is this defendant in any position to urge the point as a special ground of demurrer because its interests are not prejudiced by the alleged nonjoinder (20 Cal. Jur., secs, 54–56, p. 569 et seq.).

■ The further contention of defendant is that this complaint fails to state facts sufficient to constitute a cause of action in that ''even though plaintiffs' lands were damaged as a result of the construction of the groins, it is *damnum absque injuria*, because defendant had the common law right (sec. 4468, Pol. Code) to protect its property against the inroads of the sea, and no action will lie with the plaintiffs.'' This identical question has also just had the attention of the District Court of Appeal in another case involving this same controversy (*Katenkamp* v. *Union Realty Co.*, 11 Cal. App. (2d) 63 [53 Pac. (2d) 387], petition for hearing in this court denied February 24, 1936), to wit: an action by these plaintiffs against this defendant for damages suffered by reason of construction and maintenance of said groins as alleged in the complaint herein. In said case, as here, plaintiffs appealed from a judgment which was rendered against them for failure to amend their complaint within the time allowed therefor, after a demurrer had been sustained. The District Court of Appeal held that the complaint stated a good cause of action for damages to plaintiffs' lands and reversed the judgment. In its decision, discussing the point here under consideration, that court said: ''In support of the judgment in this case the respondent relies on the doctrine which recognizes the right of defense against the inroads of the sea as a common enemy without liability for damages incurred as a result thereof. (*Rex* v. *Pagham Comm., etc.*, 8 B. & C. 360.) That principle has been applied in California with reference to the necessary control of flood waters. (*Le Brun* v. *Richards,* 210 Cal. 308 [291 Pac. 825, 72 A. L. R. 336]; *Lamb* v. *Reclamation District No. 108,* 73 Cal. 125 [14 Pac. 625, 2 Am. St. Rep. 775].) The doctrine is clearly expressed in 1 Wood on Nuisances (3d ed.), page 675, section 494, as follows:

'' 'Every proprietor of land exposed to the inroads of the sea may erect on his own land groins, or other reasonable

defenses, for the protection of his land from the inroads of the sea, altho by so doing, he may cause the sea to flow with greater violence against the land of his neighbor, and render it necessary for the latter to protect himself by the erection of similar sea defenses. "Each landowner has a right to protect himself, but not to be protected by others, against the common enemy." But a man has no right to do more than is necessary for his defense, and to make improvements at the expense of his neighbor.'

"The 'common enemy' doctrine, however, affords no relief to the respondent in this case for the reason that the complaint specifically alleges that it built the groin complained of 'solely for the purpose of securing the accretion of sand to its shore,' and not for defense against the inroads of the sea. In other words, it is alleged that the structure was erected by the respondent to improve his property by acquiring a sandy beach on the border thereof at the expense of the appellants and not in defense of the common enemy of the sea. The authorities in support of the 'common enemy' doctrine are uniform in declaring that an owner of property may not construct or maintain structures which are detrimental to his neighbor's property, merely for the purpose of improving his own property. The application of the principle relied on by the respondent in this case is confined strictly to a necessary defense against the destruction or serious damage to one's property by the unusual forces of flood water or the inroads of the sea. One may not deliberately construct a wall or groin on his own property for the purpose of the asportation of the beach of his neighbor's property for the improvement of his own land and justify the act in the guise of the doctrine of combatting the common enemy of the sea. It is an axiom of law that one must use his own property in a manner which does not unnecessarily damage the property of others, or diminish their equal right to the full enjoyment thereof. (Sec. 3514, Civ. Code; 20 Cal. Jur., p. 267, sec. 6; 1 C. J., p. 1206, sec. 9; 1 Tiffany on Real Property (2d), p. 1117, sec. 335; *People* v. *Truckee Lumber Co.*, 116 Cal. 397 [48 Pac. 374, 58 Am. St. Rep. 183, 39 L. R. A. 581].) The owner of land adjacent to the sea may not unnecessarily adopt measures for the protection of his own land which will result in the destruction of his neighbor's land. (24 Cal.

Jur., p. 599, sec. 7; *Turner* v. *Tuolumne County Water Co.*, 25 Cal. 397.) In affirming a judgment for damages resulting from the flooding of plaintiffs' land by a storm of unusual severity on account of a ditch which the defendant maintained on its own land for the avowed purpose of protecting its property from flood water, the court said in the Turner case last cited:

" 'While the defendant had an undoubted right to ward off from its own property the damaging effects of the storm, yet in exercising that right it was bound to take care not to injure that of the plaintiffs. The defendant had no right to adopt measures for the protection of its own property which would lead to the destruction of the plaintiffs'.'

"The reports are replete with authorities supporting the doctrine last announced. It is but the declaration of a rule of common justice. The question as to whether the owner of littoral lands bordering on tidewater necessarily constructs a groin for the sole purpose of protecting his land from the inroads of the sea and not for the mere improvement of his property is primarily an issue of fact to be determined on trial from the circumstances of each particular case. The complaint in the present case clearly alleges that the respondent erected and maintains the groin in question to improve its own property by acquiring a sandy beach on its waterfront. If the structure was built for necessary protection against the inroads of the sea, that is a matter of defense which must be pleaded and proved by the respondent. We are of the opinion the complaint states a good cause of action for damages to the lands of the plaintiffs."

The amended complaint in this action contains allegations of like purport to those referred to in the above quotation. It contains no intimation that the groins were erected on defendant's land to prevent erosion or guard against the inroads of the sea but alleges in direct terms that they were erected "*solely* for the purpose of securing the accretion of sand to its shore and upon its property and thereby to create a sandy beach and shore to the front of and upon its said property." It is our opinion that said holding in the damage case is equally applicable here and that the allegations of the pleading before us are sufficient to state a cause of action for mandatory injunction, the grava-

men of the charge being that continued maintenance of the groins by defendant, thereby effecting further removal of sand and exposure of rocks along the shore fronting plaintiffs' land, will result in utter destruction of the use, character, and enjoyment of their property as high-class beach property and of their access to the waters of the bay.

Section 3479 of the Civil Code, defining a nuisance, provides: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance." Plaintiffs seek to abate said groins erected by defendant, or a portion thereof, as a nuisance, and have properly presented their cause in the form of an action for mandatory injunction.

Injunction is the method of abatement in equity and the most frequent instances of employment of mandatory injunction include the removal of nuisances (14 R. C. L., p. 315 et seq.). It appears that one who suffers damage from a continuing nuisance has two causes of action and two remedies—the one a suit for damages which is an action at law, and the other a suit to enjoin or abate the nuisance, which is in equity—and he may pursue either or both at his election and may prosecute separate actions concurrently, or may join both causes of action in one suit (20 Cal. Jur., sec. 36, p. 304; *Biber* v. *O'Brien,* 138 Cal. App. 353, 358 [32 Pac. (2d) 425]). Thus the fact that plaintiffs are pursuing their action for damages (*Katenkamp* v. *Union Realty Co., supra*) does not affect their right to maintain this action.

We have also examined the complaint in the light of defendant's further grounds of special demurrer, to wit: that the pleading is uncertain, ambiguous, and unintelligible in various respects. We do not find the pleading properly subject to any of these objections.

The judgment is reversed and the trial court is directed to overrule the demurrer and permit the defendant to answer the complaint.