[Civ. No. 2453. Fourth Appellate District.—November 13, 1939.]

C. HAROLD HOPKINS et al., Respondents, v. MARGUERITE L. MacCULLOCH, Appellant.

Winterer & Ritchie for Appellant.

L. W. Blodget, Thomas H. Kuchel and George H. Tobias for Respondents.

GRIFFIN, J.—Respondents brought this action as persons directly and specifically injured by reason of their ownership of property immediately adjacent to appellant's property, and sought to enjoin appellant from using and permitting the use of her property for nonconforming business, in alleged violation of a zoning ordinance of the city of Newport Beach. On and prior to January 6, 1936, appellant was the owner of a parcel of land described as lot 15, block 26 of the East Side Addition of Balboa tract in the city of Newport Beach, which lot has a depth of 30 feet and a frontage of 100 feet on Central Avenue and runs in an easterly and westerly direction. For a number of years the westerly 46 feet of this lot was improved with a building 10 by 24 feet in area joined to a building 18 by 24 feet in area, to which was attached a lattice-work structure of 18 by 24 feet in area, all of which was quite unsightly compared to the surrounding residential structures. For several years prior to said date and from that time to the date of the trial, the buildings and lattice-

work structure had been used for the operation of a small cafe and grocery store.

On the 6th day of January, 1936, pursuant to chapter 838 of the Statutes of California, 1929, the city council of that city adopted zoning ordinance No. 440, designating the district in which said lot 15 was located as a single family residence district. The ordinance provided in section 12 that "The lawful use of *land* existing at the time of the passage of this ordinance, although such use does not conform to the provisions hereof, may be *c*ontinued, but if such nonconforming *use is discontinued* any *future use of said land* shall be in conformity with the *provisions of this ordinance.*" (The italics used in quoted portions of ordinance are ours for purpose of emphasizing points involved.) The section also provided that "The lawful use of *a building* existing at the time of the passage of this ordinance may be continued, although such use does not conform with the provisions hereof" and that "such use may be extended throughout the building, provided no *structural alterations,* except those required by law or ordinance or *permitted under section 11 of this ordinance,* are made therein". A structural alteration, as defined by the act, is "Any change in the supporting members of a building such as bearing walls, columns, beams or girders and floor joists or roof joists." Section 11 provided that "The City Council, after receipt of a report and the recommendation of the Planning Commission in each case, as hereinafter provided, shall have the power to grant adjustment and variances in the application of provisions of this ordinance and to authorize the issuance of conditional permits," for "*the reconstruction and/or remodeling of a nonconforming building*"; and that the "Application for any *permissible* variance of regulations or for any conditional permit as provided for herein shall be made to the Planning Commission in the form of a written application for a permit;" and that after receipt of the application, the commission should post the application for public inspection for not less than one week and hold a public hearing thereon and give notice thereof by publication in a legal newspaper; and that if "the Planning Commission finds that detriment or injury to the neighborhood will not result from issuance of a permit as applied for, it may approve said permit and transmit the same, together with the complete report of its

findings and recommendations, to the City Council for approval and endorsement. In the event the Planning Commission *disapproves* any such application, no permit shall be issued therefor except upon order of the City Council passed by a *full, affirmative vote of all members* thereof." The ordinance also contained a provision requiring a use and occupancy permit.

Section 14 of the ordinance provided that before commencing any work, a permit must be issued by the building inspector of the city, and section 20 of the ordinance provided that any person who violated the provisions of the ordinance would be guilty of a misdemeanor, and that any building erected or maintained or used contrary to the provisions of the ordinance was thereby declared to be a public nuisance.

After the passage of this ordinance appellant continued to devote the westerly portions of said lot to nonforming uses, and without obtaining a permit for the reconstruction or remodeling, on or about the 10th day of February, 1937, the westerly 10 by 24 foot portion of the joint building was torn down and the remaining portion remodeled and reconstructed. On February 26, 1937, appellant filed with the building inspector a written application for a permit to reconstruct the smaller building. On that same day a permit, in accordance with said application for permission to remodel and reconstruct the portion of the lunch room that was torn down, was issued by the inspector without action by the planning commission. Appellant, through her agent, E. L. Humphrey, who was the carpenter employed on the premises, was notified by the building inspector, under instruction of the city attorney, that such reconstruction was in violation of the city ordinance and was notified to cease work. Notwithstanding, appellant thereafter practically completed the entire structure on her own initiative and apparently without authority of the planning commission. On March 8, 1937, appellant obtained a permit for and thereafter constructed on the easterly portion of the same lot, without objection, a single family residence in conformity with the city ordinance pertaining thereto. On the 18th day of May, 1937, appellant, with but 3 or 4 days more work to be done, made application in writing to the planning commission and city council of that city for a permit authorizing the completion and remodeling of the nonconforming building devoted to nonconforming use, and

paid a fee of $10 for such filing and permit. On May 19, 1937, that application was presented to the planning commission. On May 26th, the application again came before the planning commission without publication of notice of a public hearing thereon as required by the ordinance.

The following proceedings were had: "Minutes of May 19, 1937. . . . BY CHAIRMAN PARKS—I am going to do an unprecedented thing and rule this application cannot be received, as in my opinion it is entirely within the discretion of the commission to refuse a hearing in this matter . . . (BY MR. THOMPSON [Member of Com.]) : . . . The applicant has, in my opinion, abandoned the nonconforming use of this property." Thereafter the matter was laid on the table for one week and then brought up for discussion which in part was as follows: "CHAIRMAN (To Mr. Tilton, City Attorney) : Mr. Tilton, after hearing both sides do you feel we can allow a public hearing on this matter? MR. TILTON: No, the matter has proceeded beyond that point. This is my advice. MOTION: Moved by Com. F. W. Briggs that the application of Miss MacCulloch *be denied* (italics ours) for the reason that the construction referred to in said application is largely complete and the application consequently is out of order and not in conformity with the procedure established by Ord. #440." All parties to this action were present at the hearing and were represented by counsel.

On June 7, 1937, the city council instructed the city clerk to request a report from the planning commission and set a hearing on the application for June 14, 1937, and on that day the matter came on for hearing before the city council. All parties being present as before, together with a report of the proceedings of the planning commission, on motion duly made and carried it was decided by the council that "We feel that the remodeling of the nonconforming building will not in any way injure anyone affected, and if any technicalities of law are involved, that the same be left to a court of competent jurisdiction to decide . . . that the action of the Building Inspector in issuing the building permits in question be upheld and confirmed, and that the application of Marguerite MacCulloch for a permit authorizing the completion of construction and remodeling of the said nonconforming building on the lot in question be granted in accordance with the terms of said application."

It must be noted that the application dated February 26th recited: "To replace portion of apt. attached to lunch room that was torn down" (10 by 24 feet). On August 10, 1937, the city issued its permit certifying that the one-story frame building 18 by 24 feet only had been inspected and complied with the regulations of the city of Newport Beach, and authorized that it be used and occupied as a grocery store and restaurant. On October 29, 1937, the respondents instituted this action for injunctive relief against the use of the property for nonconforming cafe or grocery store purposes.

After the trial of the cause the court found that at the time of the adoption of the ordinance the two joined buildings located on one end of the lot were devoted to a nonconforming use and that on or about the 10th day of February, 1937, and prior to the 26th day of February, 1937, the appellant caused the small building (28 by 24 feet) theretofore used in the business of selling light lunches, etc., to be partially destroyed and removed; that the westerly portion of said building, being 24 feet by 10 feet in dimension, was completely destroyed and removed, including all plumbing and electrical work; and that certain partitions in the remaining portion of the structure (18 by 24 feet), together with the doors, sashes and almost the entire roof were removed, leaving the remaining standing portion of the structure dismantled. That after the smaller building had been destroyed and razed, that portion was rebuilt with entirely new structure at the place where the old portion had been removed and the remaining portion of the old building had been *structurally altered* by changes in the supporting members of the building, including a bearing wall, certain partitions, roof, beams, girders and joists.

The court then found that after the issuance of the permit on May 19, 1937, for the single family residence above mentioned, the appellant filed an application with the planning commission for a permit to finish or complete the replacement or alteration of the old building, stating that the work remaining to be done would take but two or three days' time, and that such application of May 19, 1937, was being made pursuant to section 11 of the ordinance, and found that the planning commission took *no action upon that application except to cause the same to be filed in its records;* and that *no proceedings whatever were had upon the application.* The court further found that at no time subsequent to the 10th

day of February, 1937, had there been any lawful nonconforming use of any building upon, or of the land constituting the said lot 15, but found that, notwithstanding the fact that there was no lawful nonconforming use of said lot, that the appellant without lawful authority had continued and did then continue to use the old reconstructed building for a nonconforming use, i. e., for a cafe business, contrary to the provisions of ordinance number 440; that *the nonconforming use consisted of a grocery, market and cafe business,* and that such use of said lot and the old building caused irreparable damage to the respondents and that such damage consisted in destroying the privacy, health and happiness of the respondents as property owners immediately adjacent to lot 15, and that such use caused depreciation in the value of all such properties.

Judgment was entered in favor of the respondents enjoining and restraining appellant from conducting, managing or carrying on any cafe, market, grocery store, restaurant or nonconforming business upon the property. Thereafter appellant made a motion for a new trial, which was denied. Appellant appealed from the judgment.

Appellant contends that she was at all times entitled to use the said westerly half of said lot for nonconforming use. Respondents contend that the permit issued by the building inspector was void for want of authority to issue the same and that the foregoing findings concerning construction and rebuilding of the old building and structural alterations of the remaining portion of the old building under such building permit without following the procedure outlined in ordinance number 440 established an abandonment of that building for nonconforming uses under the provisions of section 12 of the ordinance.

At the opening of the trial, appellant objected to the introduction of any evidence in the case on the ground and for the reason that the complaint did not state facts sufficient to constitute a cause of action against the appellant or a cause of action for the relief prayed for in the complaint.

We need cite no authority to the effect that the enjoyment of property cannot be interfered with or limited, arbitrarily, except that the use to which one may put his property may be restricted or regulated by a city in the

exercise of its police power, so far as it may be necessary to protect others from injury by such use. (*In re Kelso*, 147 Cal. 609 [82 Pac. 241, 109 Am. St. Rep. 178, 2 L. R. A. (N. S.) 796]; *Pacific Palisades Assn.* v. *Huntington Beach*, 196 Cal. 211 [237 Pac. 538, 40 A. L. R. 782].) Accordingly, zoning ordinance No. 440 is the yardstick by which the respective rights of the parties as to nonconforming use are to be measured or limited. ▮ This ordinance had been enacted pursuant to chapter 838 of the Laws of 1929, General Statutes. Section 10 of that chapter provides:

"The body creating such planning commission may, by general or special rule, provide for the reference of any other matter or class of matters to the planning commission before final action thereon by the public body or officer of said city, county, or city and county, having final authority thereon, with the provision that final action thereon shall not be taken until said planning commission has submitted its report thereon or has had reasonable time, to be fixed in said rule, to submit the report. . . . "

The ordinance expressly provides that:

"If the planning commission finds that detriment or injury to the neighborhood will not result from issuance of the permit as applied for, it may approve said permit and transmit the same, together with the complete report of its findings and recommendations, to the city council for approval and endorsement."

This was not a delegation of power or authority of the city council to the planning commission as contended by appellant. (*City of Stockton* v. *Frisbie & Latta*, 93 Cal. App. 277 [270 Pac. 270].)

The rights of the commission, in so far as the permit is concerned, are contained in this provision of the ordinance. The planning commission either failed and refused to act or decided to deny the application without publishing notice of hearing. Apparently it was the view of the commission that there was no necessity of publishing notice of the hearing and holding a public hearing pursuant to such notice where the commission had determined that it would deny appellant's application for a permit.

From an interpretation of chapter 838, General Statutes of 1929, section 10, *supra*, when construed with the ordinance adopted in pursuance thereof, it appears to us that the

planning commission created by the ordinance was more or less an advisory body only, and its powers must be limited to its consideration of applications for permits, and *to recommendations* for or against the allowance of the permit. The commission is authorized by the ordinance to hold public hearings on any such application after publication of notice of hearing, to the end that property owners may have an opportunity to object to the granting of the permit on the ground that detriment or injury may result to the neighborhood.

█ Respondents contend that the planning commission was without authority to act by reason of the fact that it failed to publish the notice of a hearing as required by the ordinance and consequently any action taken thereon by the commission was void. Based upon this conclusion, it is their contention that the planning commission therefore took no action upon the application and the city council was then without authority to grant the permit until the planning commission had either granted or denied the request. We see little merit to this claim of respondents. Respondents had actual notice of the hearing. They, together with many other property owners, appeared at the hearing in opposition to the application. Respondents are not now in a position to claim that they did not receive notice of the hearing by publication. (*Bradley* v. *Board of Zoning Adjustment,* 255 Mass. 160 [150 N. E. 892, 897] ; *Bartholomae Oil Corporation* v. *Seager, ante,* p. 77 [94 Pac. (2d) 614].)

In denying the application, there could be no detriment or injury to the property in the neighborhood involved and the only person injured by failure to publish notice of hearing and to hold a hearing pursuant to such notice would be appellant. It is apparent that this provision of the ordinance was inserted for the protection of the public. The commission having apparently denied the application, the only person injured and who could rightfully protest would be the appellant, and the application apparently having been denied, the law therefore would not thereafter require the performance of a useless act by way of publication of notice of a hearing for such purpose. █ After the denial by the planning commission it immediately became the right of the city council to ask for a report of the findings and

recommendations of the commission. It is apparent from the record that the city council, after what in effect amounted to a denial of appellant's request for a permit, had the right to consider the matter and authorize the issuance of the permit if it was within its power to do so legally. (*Schofield* v. *City of Los Angeles,* 120 Cal. App. 240 [7 Pac. (2d) 1076].)

It therefore appears that the finding of the trial court in respect to the action of the planning commission was not supported by the evidence. After a denial of the application for a permit by the planning commission, the city council, by a "full, affirmative vote of all members thereof" was authorized to and had the power to grant a permit for the lawful use of and for the construction and/or remodeling of the nonconforming building which existed at the time of the passage of the ordinance, provided no structural alterations were to be made therein except those permitted under section 11 of the ordinance.

This question then presents itself. Does the evidence support the finding of the court that *structural alterations,* as defined in the ordinance, had been made? From a reading of the entire record and from an examination of the photographs in evidence, we are convinced that there was evidence that there had been a complete destruction of the 10 by 24 foot building and, as described by one witness, the floor area that was demolished and later reconstructed was 35 per cent of the total floor area of the original building, and the reconstructed roof area was 73 per cent of the entire roof. Although the evidence was conflicting, there was substantial evidence in the record to support the finding that a structural alteration had been made to the joint structure. It therefore must follow under section 12 of the ordinance that unless the structural alteration was *required by law or ordinance* or *was permitted under section 11* of the ordinance, that the nonconforming use of the building was thereby discontinued and that any future use thereof must have been in conformity with the provisions of the ordinance.

Section 11 provides that where the planning commission denies the application, the city council then has authority and power to grant it only by a "full affirmative vote of all members thereof". The permit granted by

the city council was by the affirmative vote of only four members thereof. One member was absent and did not vote. The city council, by a majority vote, could have, under their power, granted the permit, had the planning commission recommended it, but it seems clear to us that it was the plain intention of the city council to provide by ordinance that their power to grant a permit after a denial by the planning commission could be exercised only by a full affirmative vote of all members of the city council and not by an affirmative vote of only those members present.

In *Tidewater Southern Railway Co.* v. *Jordan*, 163 Cal. 105 [124 Pac. 716, Ann. Cas. 1913E, 1293, 41 L. R. A. (N. S.) 130], involving a resolution adopted "by the unanimous vote" of plaintiff's board of directors, the court held that the unanimous vote of all directors present was sufficient, but also inferred that had the requirement been the "unanimous vote of all the directors" or the "unanimous vote of all the members of the board" a different interpretation would be necessary, and cited with approval *Crickenberger* v. *Westfield*, 71 N. J. L. 467 [58 Atl. 1097], holding that (from syllabus) : "where a statute requires the unanimous vote of all members of the council to pass an ordinance, that does not mean the unanimous vote of a quorum, or of all the members present, but of all the members constituting the whole council". We are therefore convinced that no legal permit was authorized or granted by the city council under the ordinance.

The complaint alleges and the proof establishes the fact that the maintenance of the grocery store and cafe in the vicinity, in violation of the ordinance under the facts and circumstances, constituted a nuisance and therefore could be abated by injunction proceedings. The facts in reference to the nuisance are strikingly similar to those set forth in *Smith* v. *Collison*, 119 Cal. App. 180 [6 Pac. (2d) 277], in which case the court said:

"The erection of a store is not in and of itself a nuisance, but, depending upon the facts of the case, may become a nuisance if erected in a residential zoned area. The trial court found that the construction of the buildings would result in certain conditions heretofore mentioned. If these conditions should exist it is fair to conclude that this would be offensive to the senses, injurious to health, an obstruc-

tion to the free use of their property, and, accordingly, result in a depreciation in value of the residence property. All of the property in the zoned area would not be so affected, but the residence property near the proposed stores certainly would be and hence these respondents would suffer exceptional damage other than that suffered by the public generally in that particular community.''

This case was cited with approval in *Biber* v. *O'Brien,* 138 Cal. App. 353 [32 Pac. (2d) 425]. See, also, sec. 3479, Civ. Code.) In the instant case, there is the additional reason that the ordinance also provided that any building erected contrary to the provisions of the ordinance would be a public nuisance.

 Appellant also contends that where an ordinance specifies that the doing of a certain act is a misdemeanor, that for that reason the same cannot be enjoined because it is punishable under the penal provisions. (Citing *Perrin* v. *Mountain View Mausoleum Assn.,* 206 Cal. 669 [275 Pac. 787].) While it is true that private persons may not resort to equity to prevent criminal acts unless the facts substantiate the claim that the person has suffered some exceptional damage to property other than that suffered by the public generally, it is the rule that even though the nuisance would constitute a private wrong, it is none the less actionable because the wrong committed also renders the guilty party liable to criminal prosecution for a common nuisance. (*Biber* v. *O'Brien, supra.*)

Respondents also argue and the court has found that the lot in question could not have had a nonconforming use and a conforming use at the same time; that the building of a one-family residence on the lot before applying for the permit in question constituted an abandonment of the nonconforming use (citing sec. 10c, subd. 1, of ordinance number 440, reading: ''In any R-1 [single-family] residence district any lot having an area less than 5000 square feet . . . may be used as a building site for one single family dwelling. . . .''; *Town of Darien* v. *Webb,* 115 Conn. 581 [162 Atl. 690], and other cases.)

Many other points are raised which we deem unnecessary to determine, in view of the reasoning above expressed in reference to the legality of the permit issued by the city council.

The complaint sufficiently sets forth a cause of action. The evidence is sufficient to support the findings and the findings support the judgment.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 8, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 11, 1940.