[Civ. No. 13753.   First Dist., Div. One.   July 26, 1948.]

THE PEOPLE, Respondent, v. XORAL OLIVER et al., Appellants.

Edward E. Craig and Jacqueline Taber for Appellants.

Francis W. Collins, District Attorney, and Wakefield Taylor, Deputy District Attorney, for Respondent.

PETERS, P. J.—The District Attorney of Contra Costa County brought this action to abate as a public nuisance certain structures and materials located on premises owned by Xoral Oliver and her daughter, Carol Borges. The court adjudged that a certain elevated structure and certain piles of lumber and waste materials on the property constituted a public nuisance, and defendants were directed to remove the same within 90 days. From this judgment defendants appeal, contending that the findings are not supported, and that, as a matter of law, the conditions shown to exist do not constitute a public nuisance.

The defendants, for the past seven years, have been the owners of three contiguous lots in Richmond Annex, an unincorporated area adjoining the city of Richmond. They have partially constructed various structures on the property, and have piled all over the area lumber, waste material and rubbish. The two defendants, with the help of one hired man, are doing their own intermittent building. Various pictures of the premises were introduced into evidence, and the trial judge, with counsel, visited the area. It appears that defendants have started the building of two residential structures, designated as structures numbered 1 and 2. Structure number 1 is at least inclosed, but unfinished inside. The defendants live in that structure and it is not involved in this proceeding. Structure number 2 was started in 1944, and is far from complete. No one lives in this building. It has been elevated on stilts and no work has been done on it for some time. This structure was abated.

The following finding is attacked as being unsupported by the evidence ". . . said property is surrounded in the immediate proximity by numerous attractive single family residential dwelling[s] and said surrounding territory is closely populated by several hundred people."

Also attacked as being unsupported by the evidence is the following finding, and, in addition, appellants contend that it does not support, as a matter of law, the conclusion that the conditions shown to exist constituted a public nuisance: ". . . for several years last past said defendants have and do now maintain upon Lots seven (7) and eight (8), in Block 96, Richmond Annex, Contra Costa County, California, an unsightly and inflammable elevated residential structure. That defendants have surrounded said structure with stacks of wooden and paper boxes and piles of lumber and other waste materials, which are located on Lots seven (7), eight (8) and

nine (9) of said block. That said building as constructed and the presence of said waste materials constitute a definite fire hazard, endangering the surrounding neighborhood and several hundred people, are offensive to the sense of sight, and interfere with the comfortable enjoyment of life and property in said neighborhood.''

Both of these basic findings are supported. The fire chief of the city of Richmond testified that during the two years prior to trial he had inspected the premises on numerous occasions; that his last inspection was the day before trial; that ''there is no question but what it is definitely a very serious fire hazard''; that building number 2, here involved, is ''built without regard to building codes, safety or—and safety in general''; that in his opinion the structure and piles of material constitute a fire menace to the entire neighborhood, which he described as being thickly populated; that he had not gone on the property to inspect it, but had done so from the adjoining properties and from the street; that he carefully inspected the premises from all four sides; that in structure number 2 ''the manner of construction, the supports, the framework is very flimsy. . . . it has uprights carrying through from the first floor up of 2 x 4's with a span between the 2 x 4's for roof joists of 2 x 4's, of perhaps 10 feet. Through the center of one part of the building, it has a span of I would say 18 or 20 feet with one, I believe a 2 x 10, about 18 or 20 feet long with no supports in between. It is built with no fire stops of any kind, and the building has been continually built onto . . .''

There was a great deal of other evidence on the fire hazard issue, as well as on the issue as to whether the premises were unsightly and whether they constituted a health menace to the community. Most of this testimony was from neighbors. There was substantial evidence to the effect that defendants' premises were in an area that is almost completely built up, mainly with single family residences. Some of the pictures introduced into evidence show some of the adjoining houses. Moreover, with consent of counsel, and in their presence, the trial judge visited the premises. What he saw on that visit is, of course, evidence. The first challenged finding is amply supported by the evidence.

The evidence as to the unsightly condition of the premises may be disregarded on this appeal. It seems to be settled that that factor alone will not make the condition a public

nuisance. (*Dean* v. *Powell Undertaking Co.*, 55 Cal.App. 545 [203 P. 1015] ; see cases collected 39 Am.Jur. § 29, p. 310.) Plaintiff makes no contention to the contrary, and in fact seems to concede that an unsightly condition, alone, will not make the property a public nuisance.

The health hazard evidence must also be disregarded. There was ample evidence that would have supported a finding, had such a finding been made, that the property was maintained in such a condition that it became a breeding place for rats, and that such rats invaded the adjoining properties. But the trial court did not find in accord with that testimony, in this connection apparently believing a city sanitary inspector who was called as a witness for plaintiff and who, while admitting the property was a ''potential'' health hazard, also testified that he could find no evidence that rats were present.

So far as the sufficiency of the evidence is concerned, the only question presented is whether the finding that the premises as maintained constitute a fire hazard is supported. As already pointed out, the fire chief so testified and gave his reasons for his belief. The other evidence on this issue was to the effect that all over the property were piles of lumber, bales of newspapers, piles of cardboard cartons, old mattresses, rag scraps, broken furniture, debris, and rubbish of all kinds and nature, and that much of this was piled under, around and in structure number 2. Testimony was offered that defendants did a considerable amount of burning on the property. Various neighbors testified to the physical conditions, and, without objection, gave it as their opinion that the storing of all of this highly inflammable material and rubbish made the premises a very definite fire hazard to the entire area. One witness, whose property adjoined that of defendants, testified that she and her husband could not go on vacations together because both felt that someone should be at home to protect their property against the danger of a fire spreading from defendants' premises. Another witness, an operator of a near-by auto court, testified that he had purchased a lot between the auto court and defendants' premises to protect his property from defendants'. Other testimony was introduced on the issue, but the above sufficiently indicates the general nature of that testimony. Moreover, as already pointed out, the trial judge visited the premises with counsel, and what he saw on that visit, is evidence. There can be no reasonable doubt that the finding

describing this condition and finding "That said building as constructed and the presence of said waste materials constitute a definite fire hazard, endangering the surrounding neighborhood and several hundred people, . . . and interfere with the comfortable enjoyment of life and property in said neighborhood" is amply supported. The only real question in the case is not whether the findings are supported, but whether such findings support the conclusion that such conditions constitute a public nuisance.

A fire hazard, at least when coupled with other conditions, can be found to be a public nuisance and abated. (*People* v. *Foerst,* 10 Cal.App.2d 274 [51 P.2d 455]; *People* v. *United Capital Corp.,* 26 Cal.App.2d 297 [79 P.2d 186].) A nuisance is defined in section 3479 of the Civil Code as "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . ." Section 3480 of the Civil Code provides that "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

Defendants contend that, as a matter of law, the maintenance of a wooden building, even of a dilapidated wooden building, and even though it increases the fire hazard to, and insurance rates on, and depreciates the value of, adjoining property, does not constitute a private or public nuisance. (See cases collected 46 C.J. § 147, p. 699; see, also, *Liebman* v. *Richmond,* 103 Cal.App. 354 [284 P. 731]; *McCloskey* v. *Kreling,* 76 Cal. 511 [18 P. 433]; *Siskiyou Lumber etc. Co.* v. *Rostel,* 121 Cal. 511 [53 P. 1118]; *Biber* v. *O'Brien,* 138 Cal.App. 353 [32 P.2d 425].) There can be no doubt that defendants had the right to construct a wooden building on the premises, and that neither the public nor the neighbors had a legal right to complain that such a building was located on the property. But the present case goes far beyond that picture. Here, a skeleton of a building has been moved onto the premises. Defendants have refused to complete the building, or to protect it. As it exists, that building is a dangerous fire hazard. This use of the property has been seriously aggravated by the piling and storing of highly inflammable materials all about, under and in the building.

This was done in an area almost completely built up. Under such circumstances, the trial judge was justified in finding, as a fact, that a public nuisance existed. While there seems to be no California case directly in point holding that a condition such as is here shown to exist constitutes a nuisance (and we have found none on either side of this issue), on principle, the solution of the problem does not appear difficult. When people live in urban and congested areas they acquire certain rights against, and they assume certain responsibilities towards, their neighbors. While they have the right to use their property, within certain limits, as they see fit, even if it annoys the neighbors or depreciates the value of adjoining property, they have no legal right to put their land to an unnatural use and to create thereon an unnecessary hazard to other properties. In a very real sense there must be a balancing of conveniences and of rights. Where the danger to an entire neighborhood is demonstrated, as it was in this case, and where the condition created is unnecessary and can be remedied, prudence, common sense, fair play and justice require that the danger to the entire neighborhood be eliminated. In such a situation the condition may be found to be a nuisance and abated.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 23, 1948. Carter, J., and Schauer, J., voted for a hearing.