[Civ. No. 15830. First Dist., Div. One. June 24, 1954.]

WALLACE STEGNER et al., Appellants, v. BAHR AND LEDOYEN, INC., et al., Respondents.

Howe & Finch for Appellants.

Costello & Johnson, Costello, Johnson & Rodgers, McDougall & Fairfax, Kenneth R. McDougall and Norman C. Howard for Respondents.

WOOD (Fred B.), J.—Plaintiffs brought this action against the owners and lessors and the lessees and operators of a certain rock quarry, to enjoin further operation of the quarry and to obtain declaratory relief.

It appears that on July 2, 1951, the board of supervisors of the county adopted, as an immediately effective urgency measure, an ordinance which in a certain zone required a permit for the erection of any building or structure designed for any use other than a single family dwelling or for the establishment of any multiple family, auto court, commercial or industrial business or use. None of the defendants took

out a permit for the operation of this quarry, claiming theirs was a previously established nonconforming use to which the ordinance did not apply. Plaintiffs claim the ordinance is applicable and that they are specially damaged by the operation of the quarry.

Among other facts, the court found: (1) Neither the ordinance in question nor any other ordinance in evidence provides any remedy or relief other than the imposition of a misdemeanor penalty if its provisions are violated. (2) The quarry is located in a mountainous, hilly, sparsely settled, unincorporated rural area far removed from any incorporated city or town or well-populated district. (3) Other commercial enterprises are carried on in the area, some owned by some of the plaintiffs. (4) The most usually traveled approach to this quarry is over 3½ miles of Page Mill Road, the first two miles of which are straight and bordered by treeless unimproved vacant land; for the last 1½ miles the road is bordered by a large rock quarry which has been there for many years, dilapidated and unsightly structures, a large cow corral full of manure, an unsightly barn and unsightly piles of debris, all plainly visible from the road and owned by others than defendants, some owned and operated by certain of the plaintiffs; about one-quarter mile beyond defendants' quarry is another large rock quarry (which has been there many years) abutting directly upon the road and plainly visible therefrom. (5) Defendants' quarrying operations have produced a quarry pit and a pile of rock but the pile is not constantly increasing in size; the quarry is in a sparsely settled mountainous and hilly area, not visible from residences of plaintiffs except Malmgren and a portion is barely visible from a portion of the residence of Stegner; it is 1,000 feet from Malmgren's residence and one-half mile from Stegner's residence; the quarry is not visible from Page Mill Road or from any public highway; neither the quarry pit nor the pile of rock has caused the area to be disfigured or blighted or impaired, nor has it made offensive the outlook from any of plaintiffs' property. (6) The quarrying operations are carried on in a careful and modern manner. (7) The operation of the machinery produces noise but most of plaintiffs' property is so far removed from the quarry that the noise cannot be heard; said operation does not produce loud or offensive noise; nor does it produce rumblings or disturbances or vibrations that can be felt on the property of plaintiffs, (8) Dust from defendants' quarry does not come on any

of plaintiffs' property in any injurious or harmful amount, if at all, or in any unusual or excessive quantities or in such quantities as to cause any injury or harm at all. (9) In said quarrying operations, bulldozers, trucks and other heavy machinery are used for removing and transporting rock therefrom and dump trucks, using Page Mill Road, call at the quarry for rock; only six of said trucks are owned by defendant Bahr and Ledoyen, the balance by persons not parties to this action; said trucks are not operated in a careless or reckless manner over the highway, nor at high speed, nor continuously; it is not true that by reason of said trucks, travel over said highway has been or is dangerous to persons using the highway; nor is the surface of the highway injured or damaged by the operation of said trucks. (10) The quarry and quarrying operations are not and do not threaten to become injurious to health or offensive to the senses or an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property; nor do they unlawfully obstruct the free passage or use of any highway in the customary manner; nor are they nor do they threaten to become a public or a private nuisance.*

From the findings the court concluded: (a) Under this ordinance defendants had a vested right to continue the establishment of their quarry to the scope contemplated prior to July 2, 1951; (b) a valid nonconforming use was established prior to July 2, 1951, and that use has not been abandoned or changed since then; (c) the ordinance is solely a penal law; no violation thereof may be enjoined; no declaration that defendants have violated or threaten to violate it may be made unless such violation is or would also be a nuisance; (d) the quarrying operations are not and do not threaten to become a nuisance, public or private; (e) the ordinance was not necessary for the immediate preservation of the public peace, health and safety and did not take effect until 30 days after its enactment; (f) defendants have not violated and are not violating the ordinance; (g) plaintiffs are not

---

*The court also found that defendants had established a commercial rock quarry prior to July 2, 1951, doing a substantial amount of work, expending money and incurring liabilities in excess of $53,000; the scope of operations is the same as planned and intended prior to July 2, 1951; the planned development commenced prior to July 2, 1951, and was completed in a speedy manner and has continued ever since without change; that on July 2, 1951, no facts existed necessitating immediate preservation of the public peace, health and safety in the area covered by the ordinance.

entitled to injunctive, or any relief, as prayed for in their complaint.

Plaintiffs, in support of their appeal from the judgment, challenge these findings and conclusions upon several grounds. We will consider first the question whether or not the evidence supports the findings that the defendants' quarrying operations do not constitute a nuisance and do not cause damage to the plaintiffs.

At the beginning of the trial counsel for defendants requested that the trial judge "visit the quarry and this area up there," as a means of eliminating the need for an expensive air pollution test and of determining the amount of dust and noise "because your Honor can hear it, your Honor can see the amount of dust, and your Honor can see just what is going on." The judge indicated willingness to do so and counsel for plaintiffs said, "That's perfectly satisfactory to us." At the conclusion of the trial the judge asked counsel if the following Monday, October 20, 1952, would be good for going out to the scene of operations and the surrounding area, and counsel on both sides agreed. A minute order of October 20, 1952, recites the convening of the court, the presence of the judge, the clerk, the sheriff and counsel for plaintiffs and defendants, and states, "Whereupon the Court views the Property in the Action . . ." The findings of fact recite that "evidence both oral and documentary was introduced and the Court, on motion of the defendants, which motion was not opposed by plaintiffs, and in the presence of counsel for the plaintiffs and counsel for the defendants having personally viewed the quarry involved and the surrounding area and the cause having been submitted, the Court makes the following findings of fact and conclusions of law . . ." There is no record of what the judge observed upon this occasion other than as reflected in the findings of fact and conclusions of law which he later signed and filed.

Under the circumstances there can be no doubt of the applicability of the rule that the trial judge's view of the property "with the consent of counsel is evidence in the case and 'may be used alone or with other evidence to support the findings.' (*Noble* v. *Kertz & Sons Feed & Fuel Co.*, 72 Cal.App.2d 153, 159 [164 P.2d 257]; see also *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 348 [171 P.2d 542]; *Safeway Stores* v. *City Council, San Mateo*, 86 Cal.App.2d 277, 284 [194 P.2d 720]; *Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 366 [203 P.2d 37]; *Sindell* v. *Smutz*, 100 Cal.App.2d 10,

15-16 [222 P.2d 903].)'' (*McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 889 [264 P.2d 932]. See also *Ethel D. Co.* v. *Industrial Acc. Com.,* 219 Cal. 699, 704-705 [28 P.2d 919] ; *Neel* v. *Mannings, Inc.,* 19 Cal.2d 647, 654 [122 P.2d 576] ; *Stacey* v. *Hayes,* 31 Cal.App.2d 422, 424 [88 P.2d 165] ; *Anderson* v. *State,* 61 Cal.App.2d 140, 145 [142 P.2d 88].)

Plaintiffs contend that this rule is not here applicable because the judge made only one visit and did not have adequate opportunities to observe operations under all conditions. It is not apparent from the record that one visit was insufficient or that the judge's opportunities to observe or the observations which he actively did make were inadequate in any respect. If plaintiffs had any misgivings in this respect they should have voiced them at the time instead of urging them for the first time upon appeal. They rely upon *Fendley* v. *City of Anaheim,* 110 Cal.App. 731 [294 P. 769]. It is true that in that case the reviewing court found the evidence did not support the findings of the trial judge despite the fact that he had viewed the premises. The court recognized the general rule, that what the court observed in such a case is evidence, but there the trial judge made and recorded a summary of his observations, to the effect that ''he discovered vibrations, the presence of which was made manifest in the same manner as the witnesses had described, and he also observed a rattling of the windows. Under such circumstances, at most the observations of the court while viewing the premises were simply in corroboration of the evidence.'' (P. 736.) In other words, there the trial judge made a record of his observations and those observations were inconsistent with the findings of fact which he made. In addition, as expressed in *McCarthy* v. *City of Manhattan Beach, supra,* 41 Cal.2d 879, 889, the evidence in the Fendley case ''established that most of the discomforts occurred at nighttime. There was no evidence to the contrary and in such circumstances, the trial court's inspection of the premises in the daytime was an insufficient basis to sustain its finding that the operation of the plant caused no discomfort to plaintiffs.'' We have no such situation in our case. We see no reason why the general rule is not fully applicable here.

Plaintiffs further contend that the usual weight cannot be accorded the judge's view of the premises because, they say, it is contrary to all the evidence in the case. There is no such conflict.

Defendant Bahr described the operations at the

quarry in some detail. These operations have included blasting since August 1, 1952, not before; done about twice a week. It is deep blasting, which gives off very little sound. The general blasting that most people call blasting is known as surface blasting, used in breaking boulders and blasting tree stumps. Defendants do not do surface blasting. Plaintiff Wallace Stegner testified that during a period of one and one-half years he heard only three blasts; two in July, 1952, and one in October, 1952. He thought the July blasts came from the direction of the quarry and was more certain that the October blast did. Plaintiff Cary B. Jones lives about a mile from the quarry. He heard a blast in July; did not know where it came from; it did not vibrate his house perceptibly. Bahr testified he heard a blast in July but it did not come from this quarry. Stegner observed no vibrations at his place other than upon the occasion of the October blast. Plaintiff Malmgren testified that he observed blasting (one shot) in September, 1952. It was a·dull thud, not a very heavy blast. Mrs. Kathryn Kuehn, not a party, heard blasting in July, 1952, and again several weeks before the trial. She did not know where the July blast came from. It made the windows rattle. The more recent blast was not so loud and did not shake the place. She lives 1½ miles from defendants' quarry. She does not hear the quarry operations. Here is evidence which, coupled with what the judge may have observed, would support a finding that the quarry operations do not cause vibrations which affect the properties of the plaintiffs.

█ One asserted element of damage is noise incident to the bulldozer, scraper, and rock crushing operations at the quarry. Plaintiff Margaret Stebbins operates a nursery on Page Mill Road about one-quarter mile from the quarry. She hears noise from the operation of a caterpillar, not too loud, except when the wind blows in her direction. She says the traffic on the road is very audible. Mr. Stegner described the noise as fairly constant during working hours; grinding noises and heavy motor noises. His hearing of these noises depends upon the wind direction, whether he is inside or outside his house, whether or not the radio is on, and "many things." Asked by the court if he was not in an area where there are a lot of airplanes flying around, Stegner said "sometimes," generally on Sunday afternoon, principally the little Pipers. Asked by the court if while in the courtroom he had heard jet planes flying around, he said, "No, my ears have

been tuned to other things.'' We mention this as an indication that the court, perhaps, was making an appraisal of the witness' sensitivity to various types of sound. Mrs. Johnson, not a party, lives about 300 to 400 yards from the quarry. She cannot see the quarry, there being a hill in the way. She hears noises from the quarry when outside her home but not while inside. Mrs. Elizabeth Garbett, not a party, lives about one-quarter mile from the quarry. She cannot see it but can hear a bulldozer and scraping. Mrs. Kuehn lives about 1½ miles from the quarry. She testified she does not hear the quarry operations, other than the blasting which she mentioned. In weighing this testimony, the trial judge had the benefit of his own personal observations upon the ground. We do not. He had real evidence, not incorporated in this record, concerning the nature, intensity, frequency and constancy of the noise emanating from the quarry and from other sources. We see no basis in this record for a reviewing court to substitute its judgment for that of the trial court concerning such facts.

█ Dust was another element of alleged damage. Mr. Stegner testified that since the quarry operations started, it became necessary to wash the windows at his house twice as often and that there was dust on the furniture. The dust is not so heavy as to be appreciable on the outside. Malmgren testified there is dust coming from the quarry, when the wind blows in his direction. Mrs. Malmgren testified she gets some dust when the wind is blowing right. Mr. Jones says it is a little dustier than previously. Mr. Stedman said there is some dust; his bushes and the trees are dirty. There is testimony, also, that the traffic on Page Mill Road causes a great deal of dust. If so, that contribution to the dust in the air would not necessarily be attributable to the quarry operations. It might be due solely to the manner in which the trucks are operated, most of them by persons not parties to this action. This testimony concerning dust conditions and the cause or causes thereof is not such that a reviewing court could undertake to balance it against the unrecorded observations of the trial judge and say as a matter of law that those observations, considered alone or in connection with the testimony, could not support the findings which the judge made upon this subject.

█ Another element of alleged damage is the asserted unsightly disfiguration of the landscape. Mr. Stegner testified on that subject. He can see a portion of the quarry from

his front window. His house is on the upper part of his property. Lower down on his property he cannot see the quarry. He considers that the view from his window is spoiled; the quarry site is a steady widening area of bare rock. Mrs. Stegner said that now they generally do not use their front terrace because of the noise and change of view. Our attention has not been called to any other witnesses who testified on this subject for the plaintiffs. Against this evidence must be weighed the impressions received by the judge when he viewed the quarry site in its setting—a hilly, mountainous, uncultivated, sparsely settled area with two other, long-established quarries in the vicinity. We cannot overturn his findings and substitute others of our own upon such a record.

Further delineation of the testimony seems unnecessary. Enough has been narrated to demonstrate the fallacy of plaintiffs' argument that the recorded evidence in the case is such as to negate the inference or presumption that what the judge observed, the things he saw and heard when he viewed the properties and the area, furnish sufficient support for his findings. ■ We must bear in mind, also, that in "determining whether a present or proposed use of property is a nuisance, many factors must be considered. 'The law relating to private nuisances is one of degree. A use that would be reasonable under one set of facts might be unreasonable under another.' [Citation.]" (*Hassell* v. *San Francisco,* 11 Cal.2d 168, 170 [78 P.2d 1021].) In other words, the trial judge had the function not only of ascertaining the effects, if any, of defendants' quarry operations upon plaintiffs and their properties, but also of determining whether or not those effects, under all the circumstances, constituted a nuisance. The ordinance does not declare that violation of its provisions is a nuisance; it merely imposes criminal penalties upon the violator.

■ Several of the witnesses complained of traffic conditions on Page Mill Road, between the side road to the quarry and the major highways. They said there was a marked increase in traffic since these quarry operations began. To Mrs. Johnson, the increase in traffic appeared very hazardous, apparently the principal untoward effect of the quarry operations as it seemed to her. Mrs. Malmgren also said the truck traffic is heavy on Page Mill Road and that the trucks raise a great deal of dust. Mr. Stegner said the truck hazard is an element of injury and changes the character of the neigh-

borhood. The trucks on the road cause noise but not vibration. Mrs. Kuehn seemed to consider the increased traffic on Page Mill Road a major result of quarry operations.

None of the evidence in the record demonstrates that this traffic obstructs or interferes with the exercise of the right of ingress or egress of any plaintiff whose lands abut the road. Nor does the evidence indicate that the increased truck traffic "unlawfully obstructs the free passage or use, in the customary manner, of any . . . highway . . ." (Civ. Code, § 3479.) (See *Rose* v. *State,* 19 Cal.2d 713, 727-728 [123 P.2d 505], and *Lane* v. *San Diego Elec. Ry. Co.,* 208 Cal. 29, 33-34 [280 P. 109], for a discussion of the nature of an abutting property owner's rights in a highway—a public right which he enjoys in common with all other citizens and certain private rights which arise from his ownership of property contiguous to the highway and which are not common to the public generally.) Accordingly, the evidence does not authorize a reviewing court to overrule the trial court's findings and conclusions that the increased traffic on the road does not furnish a basis for enjoining quarry operations at the instance of these plaintiffs in this action. Plaintiffs invoke *Voorheis* v. *Tidewater Southern Ry. Co.,* 41 Cal.App. 315 [182 P. 797], in support of their contention that, as they put it, "the surcharged use of the highway was a substantial interference with the property rights of plaintiffs in Page Mill Road." We do not so interpret that decision. The case was an appeal after the sustaining of a demurrer to the complaint which alleged, among other facts, that the defendant railway company in violation of the terms and conditions of its franchise, had permitted freight cars to stand on the street for more than five minutes in one block and for more than half an hour at a time, " 'thereby obstructing and impeding travel and traffic on said streets . . .' " to the injury and detriment of the public and abutting property owners, including the plaintiff. (P. 317.) The court viewed these allegations as a sufficient showing of an unlawful obstruction of a highway and an interference with plaintiff's "private easements" in the street. This is clearly indicated by the discussion on page 322, including the quotations from *Williams* v. *Los Angeles Ry. Co.,* 150 Cal. 592 [89 P. 330], and *Strong* v. *Sullivan,* 180 Cal. 331 [181 P. 59, 4 A.L.R. 343], and the comment that it "would have strengthened the complaint had plaintiff been more specific in showing in what way the Railroad Company's acts caused injury to

his property in particular and bestowing less attention to its acts in affecting the public in general or other private property. But we think enough is shown to entitle her to such relief as the facts proven may warrant." (Pp. 322-323.) That case furnishes no basis for overruling the trial court's conclusion that the asserted surcharged use of the highway does not furnish a basis for enjoining the operation of the quarry in the instant case.

Failing to prove that the operation of the quarry constitutes a nuisance and failing to prove that the operation of the quarry results in legal injury to them, plaintiffs are in effect seeking, solely and simply, to enforce a penal law. No such remedy is available to them. "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or unfair competition." (Civ. Code, § 3369.) ██ "This statutory enactment is but the expression of the fundamental rule that courts of equity are not concerned with criminal matters and they cannot be resorted to for the prevention of criminal acts, except where property rights are involved." (*Perrin* v. *Mountain View Mausoleum Assn.*, 206 Cal. 669, 671 [275 P. 787], affirming a judgment which dismissed a suit to enjoin the erection and maintenance of a mausoleum in a residence district in violation of a municipal ordinance.) This principle is one of long standing, as indicated by the earlier authorities reviewed in the Perrin case, and has been consistently adhered to throughout the years. "It is elementary that violation of a penal ordinance does not of itself create a private nuisance *per se,* and it is likewise elementary that in the absence of special injury an injunction will not be granted on the application of a private individual merely to prevent violation of a penal statute." (*Carter* v. *Chotiner,* 210 Cal. 288, 291 [291 P. 577]. See also *Smith* v. *Collison,* 119 Cal.App. 180, 184 [6 P.2d 277]; *Biber* v. *O'Brien,* 138 Cal.App. 353, 357-358 [32 P.2d 425].) "It is a general rule . . . that the violation of a penal statute does not constitute a nuisance unless the doing of the prohibited acts would constitute a nuisance in the absence of the statute." (*People* v. *Steele,* 4 Cal.App.2d 206, 208 [40 P.2d 959, 41 P.2d 946].) Equity is "loath to interfere where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted."

(*People* v. *Lim*, 18 Cal.2d 872, 880 [118 P.2d 472]. See also *International etc. Workers* v. *Landowitz*, 20 Cal.2d 418, 421-423 [126 P.2d 609].) Plaintiffs cite *Sapiro* v. *Frisbie*, 93 Cal.App. 299 [270 P. 280], *Smith* v. *Collison, supra,* 119 Cal.App. 180, and *McIvor* v. *Mercer-Fraser Co.,* 76 Cal.App. 2d 247 [172 P.2d 758], in support of their contention that violation of a zoning ordinance is a nuisance *per se* and actionable at the instance of private property owners. A sufficient answer is that in each of those cases injuries to the properties of the plaintiffs were involved. We do not find in them a sound basis for holding the general rule inapplicable in the instant case.

In view of these conclusions, it is unnecessary to consider other questions discussed by the parties upon this appeal.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied July 19, 1954, and appellants' petition for a hearing by the Supreme Court was denied August 19, 1954.