[Civ. No. 6705.   Fourth Dist.   Oct. 24, 1961.]

THE COUNTY OF SAN DIEGO, Respondent, v.
C. W. CARLSTROM et al., Appellants.

Rubin, Seltzer & Solomon, Joseph J. Fisch and Herbert J. Solomon for Appellants.

Henry A. Dietz, County Counsel, and James E. Miller, Deputy County Counsel, for Respondent.

SHEPARD, J.—This is an appeal from a judgment ordering a mandatory injunction to abate public nuisance.

The complaint is in two counts, the first of which alleges facts intended to show a violation of Ordinance 1414 of the County of San Diego relating to temporary storage of structures under county permits, and the second being directed to the general problem of a public nuisance due to the extremely dilapidated, unsightly, dangerous and fire-hazardous condition of the temporarily stored structures, representing salvage from federal public housing units which had been purchased by one of the defendants.

## FACTS

The substantially pertinent facts shown by the record before us are as follows: In 1954 defendant Carlstrom purchased for resale certain federal housing unit structures that had been used during World War II. They were two-story, eight-plex

buildings with the ground floor on a cement slab. In March and May of 1955, Carlstrom petitioned for and secured temporary storage permits for those portions of the buildings which were salvaged. The petitions and the permits were pursuant to San Diego County Ordinance Number 1414. Each permit was for a period of one year, and the ordinance under which the permit was issued required the removal of such temporarily stored structures prior to one year from the date of the issuance of the permit.

The lower portion of each purchased structure was wrecked for salvage, but the upper floor, as far as feasible, was removed intact, and either sold to private purchasers or moved to the two storage sites for which the permits had been obtained. Site 1 was on Lot 10 of Magnolia Tract on Bradley Avenue, and site 2 was on Lot 3, Block 1, La Bonita Park Terrace on Vernon Street. In order to move the buildings, most or all of them were sawed into two or three parts. About 150 units were moved to the temporary storage sites.

Other defendants were given or otherwise acquired an interest in a portion of the units or the lots on which they were stored. Defendants experienced some difficulty in disposing of the units and on the petition of the then owners, the permits were twice renewed, once for a period of six months and once for a period of one year. The permits finally expired in September and November of 1957, and were never renewed. At the time of trial there still remained on the two sites approximately 133 units. No units had been removed for an entire year prior to the commencement of the present action on October 13, 1959.

While there was some degree of conflict in the testimony as to the condition of the structures, the record shows, in general substance, that none of the structures was lawfully usable for human habitation under the building ordinances of the county of San Diego; that they had been originally constructed with 2-inch by 3-inch studs (1 inch smaller than allowed by the building ordinance); that the wiring for electricity was entirely deficient; that the plumbing likewise could not be used; that most of the plumbing fixtures had been removed; that the structures were all roofed with tar paper; that there were no fire stops in the attics; and in the opinion of some witnesses it would not be economically feasible to remodel the structures in order to make them available for lawful residential use. Apparently this was one of the primary reasons for defendants having been unable to dispose of them

in the general market, it appearing that in a period of four years only about 15 of the original 150 temporarily stored structures had been removed.

The testimony as to their condition at the time of trial clearly indicates the type of rapid dilapidation to be expected of the flimsy structures hastily erected under pressure of wartime conditions and left uncared for. All or most of the exterior windows were broken, according to one witness. Many doors and windows and their frames had been torn loose and were hanging askew. All of the sawed rafters were exposed. The structures originally had been placed on supporting blocks about 3 feet high, but at the time of trial many had either fallen off of the block supports or the supports had broken through the floor. The wallpaper, where there was any in the structures, was hanging in tatters, and grass and other inflammable debris had accumulated under the buildings. All buildings had been massed together, about 30 being on the Bradley Avenue site and about 103 on the Vernon Avenue site. There was evidence of the finding of bedding material in some of the buildings, along with charred pornographic magazines, cigarette butts, and beer cans. Testimony was adduced that juveniles were seen regularly going to and from the buildings.

Local fire enforcement officals testified that each mass of buildings presented a fire hazard of the most extreme character. They recited, *inter alia,* with reference thereto, that each site is located in the midst of a rapidly growing residential area in which there were already, at the time of trial, several hundred residences within a radius of one mile. They pointed out that, due to the large mass of extremely combustible material, the impossibility of fire apparatus, reaching the interior of the mass, excessive distance to fire hydrants, the wide-open ventilation of the structures, the lack of fire breaks, the funneling effect of the openings between, under and through the structures, the presence of highly combustible grass and other debris under the buildings, and other factors, fire departments would never be able to control any blaze that started, and that there was great likelihood of the blaze spreading to surrounding areas and structures. The trial judge, by stipulation, visited and examined the structures. What he saw is not a part of the record before us.

The trial judge found, in general substance, that the action had been authorized by the board of supervisors; that the structures were moved to the sites under permits for tem-

porary storage pursuant to the provisions of said County Ordinance Number 1414; that said permits expired September 28 and November 16, respectively, of the year 1957; that the various defendants owned certain specified portions of the structures or land; that ''VIII For many months last past in close proximity of many neighbors, . . . (defendants) . . . have maintained said residential structures in an extremely dilapidated and dangerous condition. Much vandalism has occurred and the resultant condition of said structures has created a fire hazard extremely dangerous to the property of many neighbors in close proximity thereto.'' The court concluded that:

''II Said fire hazard is an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life and property of numerous neighbors in close proximity thereto.

''III That said fire hazard is a public nuisance which should be abated by an injunction.

''IV That plaintiff is entitled to a mandatory injunction of this Court requiring . . . (defendants) . . . , to permanently remove said residential structures, with the exception of three (3) remodeled structures now located on foundations on the Bradley Avenue site, from the above-described parcels of real property in accordance with the following time limits: . . .''

Then follows an extension of time for removal within six months of the date of entry of judgment, or if appeal be taken, three months after judgment becomes final or twelve months from date of entry of judgment, whichever is earlier. Judgment was entered in accordance therewith, and defendants appeal.

### Fire Hazard Is Public Nuisance

Defendants first advance two principal contentions, i.e., that a fire hazard cannot of itself be abated as a public nuisance, and secondly, that the evidence does not support finding of fact Number VIII, above quoted. We cannot agree with either of these contentions.

Our courts, of course, have always recognized that all members of society must, in order to live amicably with each other, suffer some degree of inconvenience or damage in order that others also may enjoy life. What is or is not a nuisance becomes ultimately a matter of degree, varying with the particular circumstances of each individual case. As was aptly

stated in *People* v. *Oliver*, 86 Cal.App.2d 885, 890 [195 P.2d 926]:

"When people live in urban and congested areas they acquire certain rights against, and they assume certain responsibilities towards, their neighbors. While they have the right to use their property, within certain limits, as they see fit, even if it annoys the neighbors or depreciates the value of adjoining property, they have no legal right to put their land to an unnatural use and to create thereon an unnecessary hazard to other properties. In a very real sense there must be a balancing of conveniences and of rights. Where the danger to an entire neighborhood is demonstrated, as it was in this case, and where the condition created is unnecessary and can be remedied, prudence, common sense, fair play and justice require that the danger to the entire neighborhood be eliminated. In such a situation the condition may be found to be a nuisance and abated." (See also *Hassell* v. *City & County of San Francisco*, 11 Cal.2d 168, 170 [1] [78 P.2d 1021]; *Anderson* v. *Souza*, 38 Cal.2d 825, 838 [11] [243 P.2d 497]; *McIntosh* v. *Brimmer*, 68 Cal.App. 770, 777 [3-5] [230 P. 203].)

Under the provisions of Civil Code section 3479 a nuisance is anything injurious to health or indecent or offensive to the sense, or an obstruction of the free use of property; and under Civil Code section 3480 any such nuisance which affects at the same time an entire community or neighborhood is a public nuisance, even though individuals may be affected unequally.

Just as all people living in communities must endure some unwelcome situations, odors, air pollution, obstruction of free passage, insects, and other types of interference with the happiness of their lives, so must they endure those normal and ordinary dangers of fire which are present in the reasonable and necessary activities of life in every social order. The use of fire and heat in innumerable forms for the comfort and needs of humanity makes this inevitable. However, when any member of the community so unreasonably conducts his affairs as to create excessive and unbearable odors (*Johnson* v. *V. D. Reduction Co.*, 175 Cal. 63, 65 [1] [164 P. 1119, L.R.A. 1917E 1007]); or smoke (*Snow* v. *Marian Realty Co.*, 212 Cal. 622, 624 [1] [299 P. 720]); or dust (*Centoni* v. *Ingalls*, 113 Cal.App. 192, 195 [2] [298 P. 47]); or soot (*Sullivan* v. *Royer*, 72 Cal. 248, 250 [4] [13 P. 655, 1 Am.St.Rep. 51]); or danger from explosive materials (*Fisher* v. *Western Fuse & Explosives Co.*, 12 Cal.App. 739, 746 [6] [108 P. 659]); or

water pollution (*People* v. *Truckee Lumber Co.*, 116 Cal. 397, 402 [5] [48 P. 374, 58 Am.St.Rep. 183, 39 L.R.A. 581]) ; or constantly raucous sounds seriously offensive to neighborhood nerves (*Markey* v. *Danville Warehouse & Lumber, Inc.*, 119 Cal.App.2d 1, 7 [6] [259 P.2d 19]) ; such condition is a nuisance and will be subject of abatement.

▮ The happiness and joy of life are inextricably interwoven with man's emotions. No one is naive enough not to understand that the constant pressure of serious fear can and often does destroy all happiness in life and property. All sane adults are aware of the latent danger of fire, and their fears are quickly aroused by the unnecessary creation of extremely hazardous situations. The presence in a settled residential community of an unnecessarily extreme fire hazard can well create and maintain that fear in the lives of the people of that community and make of the hazard a public nuisance. No one has the right to inflict unnecessary and extreme danger to the life, property and happiness of others. The greater the number of people threatened, the greater becomes the need for abatement correction. Our courts have recognized this in respect to fire hazard in several cases : *People* v. *Wing,* 147 Cal. 382, 383 [1] [81 P. 1104] ; *People* v. *Foerst,* 10 Cal. App.2d 274, 275 [1] [51 P.2d 455] ; *People* v. *Oliver, supra,* p. 889 [5] ; *People* v. *Vasquez,* 144 Cal.App.2d 575, 577 [1] [301 P.2d 510].

▮ We are satisfied that the evidence presented by the record before us, which includes the judge's examination of the premises (*McCarthy* v. *City of Manhattan Beach,* 41 Cal. 2d 879, 889 [5] [264 P.2d 932] ; *Stegner* v. *Bahr & Ledoyen, Inc.,* 126 Cal.App.2d 220, 225 [1] [272 P.2d 106] ; *People* v. *Oliver, supra,* p. 887 [1]), amply justified the trial court's finding that an extremely dangerous fire hazard existed, and that under the conditions there present it was a public nuisance. None of the authorities cited by defendants involve a fire hazard in any way approaching that which is here involved.

FINDINGS OF FACT SUPPORT CONCLUSIONS OF LAW

Defendants next contend that the findings of fact do not support conclusions of law II, III and IV. For the reasons hereinbefore set forth, we find no merit in this contention.

COURT'S JURISDICTION

▮ Defendants also contend that Code of Civil Procedure, section 731a is exclusive and restrictive, and that the court

did not have jurisdiction to grant a mandatory injunction under the facts here present. We are unable to agree with this contention.

None of the facts present in the case at bar bring these proceedings within the province of the protection claimed under said section 731a, and no finding thereon was necessary. Defendants do not hold any permit or license on the subject here under consideration. They had not held a license for more than two years prior to the commencement of the action. Furthermore, it would appear that the remedy under said section 731a is, in any event, an alternative one. (*People* v. *City of Los Angeles*, 160 Cal.App.2d 494, 508 [20] [325 P.2d 639].)

## No Estoppel

Defendants contend that because, when the permit for temporary storage was granted, the board of supervisors resolved that no fire hazard would be created, the board should now be estopped to assert that a fire hazard existed at the time the action was commenced. We find no merit in this contention.

By the very wording of the ordinance under which the petition for the permits was presented and the permits were issued, the board in its resolution was discussing a temporary situation and must have had in mind the fact that changing conditions demanded that such permits not be granted for extended periods. The evidence and the findings of the court show serious dilapidations and vandalism since the structures were first placed on the sites. We can find nothing here which would warrant the application of the principle of estoppel. Any declaration which the board made as of the spring of 1955 could have no effect to protect the defendants under the conditions here present, even though the ordinance were open to attack on constitutional grounds. (*Gregory* v. *Hecke*, 73 Cal.App. 268, 284 [21] [238 P. 787]; *Maguire* v. *Reardon*, 41 Cal.App. 596, 601 [5] [183 P. 303]; *Contra Costa County* v. *American Toll Bridge Co.*, 10 Cal.2d 359, 366 [74 P.2d 749]; *Judson* v. *Los Angeles Suburban Gas Co.*, 157 Cal. 168, 173 [5] [106 P. 581, 21 Ann.Cas. 1247, 26 L.R.A. N.S. 183]; *People* v. *City of Reedley*, 66 Cal.App. 409, 413 [2] [266 P. 408]; *Williams* v. *Blue Bird Laundry Co.*, 85 Cal.App. 388, 392 [3] [259 P. 484]; *Sullivan* v. *Royer, supra*, p. 251 [5].)

For similar reasons, defendants are in no position now to deny the promise of removal prior to the termination of the

permits, which promise was implicit under the ordinance in the whole proceeding involving the petition for and the issuance of the permits.

## Mandatory Injunction Proper

■ Defendants also contend that the mandatory injunction for removal of the structures from the sites was harsher than necessary, and that defendant should have been allowed to use some other means to abate the nuisance. Several factors impel us to the conclusion that the judgment of the trial court was not an abuse of discretion. As above pointed out, there was, under the ordinance, an implicit promise by defendants, when they petitioned for and secured the permits for temporary storage, that they would remove the structures within one year after the issuance of the permits. The sum total of the evidence likewise indicates that this was the intention of the parties. That promise was not fulfilled. Being apparently unable to quickly dispose of the structures, a second approach was made to the board of supervisors under the ordinance, and an extension was secured. The same promise of removal was implicit in that extension. The second promise was not kept. Being still unable to dispose of the structures at a profit during the second extension, a third approach was made to the board, and another extension was secured, with a third promise implicitly a part of the proceedings for the second extension. For a third time defendants did not keep this promise. The last extension expired without any effective efforts on the part of defendants to remove the structures.

Thereafter more than two years expired without defendants holding any permit whatever, and with dilapidation continuing. There was testimony that the structures could not be remodeled and sold within the economic limitation of profit. The whole testimony tends to support this view. Under all the circumstances, we can find no abuse of the court's powers in the order as made. (*People* v. *Vasquez, supra,* p. 577 [2] ; *People* v. *Foerst, supra,* p. 276 [2] ; *People* v. *United Capital Corp.,* 26 Cal.App.2d 297, 299 [3] [79 P.2d 186].)

As above recited, the trial court did not find it necessary to base its decision on the cause of action alleged under the ordinance, and did not pass on the constitutionality thereof. Since we have found that the trial court's decision was correct on the second cause of action and was amply supported by the evidence, it is likewise unnecessary for us to here dis-

cuss that phase of the case. None of the authorities cited by defendants express any views contrary to those hereinbefore set forth, and we find it unnecessary to discuss them in detail. Other points raised by the parties are sufficiently covered in the discussions above set forth.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied November 17, 1961, and appellants' petition for a hearing by the Supreme Court was denied December 20, 1961.